E. B. Thompson *v.* Henry Sproul, doing business as
Henry Sproul & Co., Appellant.

[Marked to be reported.].

*Contract—Evidence—Broker.*

In an action by T. against a firm of brokers to recover a balance alleged
to be due upon a transaction in railway stock, defendant claimed that he
had no dealings with T., but only with his son, T., Jr. The evidence of
both father and son was that the son dealt with the defendant in the rail-
way stock transaction as agent for his father. The first receipt signed by
the defendant was to T., Sr., and all other letters and receipts relating to
the railway stock were to T. Three years after the beginning of the trans-
action in railway stock the son began dealings with the defendant in wheat.
All the correspondence relating to the wheat transactions was with T., Jr.
During the progress of the transactions the defendant permitted the son to
draw money from the street railway stock account, and apply it to the wheat
account. This was done without the knowledge of T., Sr. There was a loss
on the wheat account which the defendant offsets against the gain on the
railway stock account, claiming that the transactions in both accounts were
for the son. *Held,* (1) that the question whether the defendant knew
that the transactions in railway stock were on account of the father, was
for the jury ; (2) that a mere authority from the father to the son to pur-
chase stock for the father would not justify the defendant, knowing the
facts, in allowing the son to withdraw money from the railway stock
account for his private use for any purpose ; (3) that the fact that the
father may have allowed the son to draw out some of the money from

the railway stock account, and use it for himself, did not operate as a general sanction for all the son's acts, nor clothe him with the authority of a general agent.

Argued Oct. 21, 1896.   Appeal, No. 22, Oct. T., 1896, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1894, No. 6, on verdict for plaintiff.   Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover a balance alleged to be due on stock transaction.   Before STOWE, P. J.

At the trial it appeared that there were two men named E. B. Thompson, father and son ; that the father is the plaintiff in this case ; that in 1889 an account was opened with the defendant, a broker, by the purchase of thirty shares of Central Traction Company's stock at thirty dollars per share.   The receipt given was to E. B. Thompson, Sr., but the order was given by E. B. Thompson, Jr., his son.   Other purchases were subsequently made, and the other receipts were given to " E. B. Thompson."   In 1892, E. B. Thompson, Jr., began transactions in wheat with the defendant, and all the papers and correspondence in relation to the wheat transaction were in the name of " E. B. Thompson, Jr."   On January 18, 1892, E. B. Thompson, the son, drew a draft upon Sproul & Lawrence for two hundred and fifty dollars ; and upon January 25, he got from them one hundred dollars, for which he gave his receipt ; and upon February 10, he got seventy-five dollars, for which he gave his receipt, using these moneys for his own private purposes.   On February 1, there was transferred to the wheat account five hundred dollars which stood in the Central Traction Company account, and on March 1 of the same year another five hundred dollars was transferred to the wheat account from the Central Traction Company account.   Both father and son testified that the transactions in Traction stock were for the father.

Defendant's points and answers thereto were as follows :

1. That under all the evidence in the case, the verdict must be for the defendant.   *Answer:* In other words, that the verdict should be for the defendant.   That is refused.   It depends

upon what we have already said with reference to the notice; the knowledge of the defendant as to the ownership of this money, and of the party for whose benefit this stock transaction was carried on. [1]

2. That if the jury believe that the Central Traction stock account was for E. B. Thompson, Sr., and the defendant knew it, and that E. B. Thompson, Jr., was the authorized agent, then all credits must be allowed for moneys appropriated by E. B. Thompson, Jr. *Answer:* That is refused. It is altogether too broad. If the defendant knew, as this point assumes, that the stock was purchased for the plaintiff by the son, the mere fact that the latter was the authorized agent to purchase stock for his father would not excuse the defendant in allowing him (the son) to withdraw the money directed to be used for the purchase of stock, for any other purpose, without the father's consent. [2]

3. If the jury believe that the two accounts were for the benefit of the same person, then, under the testimony in this case, the verdict must be for the defendant. *Answer:* That is affirmed. If you believe this transaction from first to last was for the benefit of the son, although the father might have furnished him the money, yet, if it was actually for the benefit of the son; if the evidence indicates that, then of course the plaintiff is not entitled to recover here, because he has no interest in the transaction; it would be the son's transaction, and whatever claims the son might have cannot be settled in this case. Therefore, your verdict would have to be for the defendant in that case. [3]

Verdict and judgment for plaintiff for $3,112.23. Defendant appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*Edwin W. Smith,* with him *P. C. Knox* and *James H. Reed,* for appellant.—When the facts are undisputed the question whether or not they amount to a ratification is one of law for the court: Mechem on Agency, sec. 135; Wharton on Agency, sec. 77.

A principal who neglects promptly to disavow the act of an agent who has transcended his authority is deemed to have rati-

fied it: Bredin v. Dubarry, 14 S. & R. 27; Kelsey v. Bank of Crawford Co., 69 Pa. 426; Schrack v. McKnight, 84 Pa. 29.

*Geo. Shiras,* 3d, with him *C. C. Dickey* and *W. K. Shiras* for appellee.

OPINION BY MR. JUSTICE GREEN, January 4, 1897:

The learned court below gave to the defendant every possible opportunity to get a verdict, if he could convince the jury of the truth of the facts upon which he based his defense. Upon reading the testimony, however, it is not at all surprising that the verdict was rendered in favor of the plaintiff, as the evidence in support of his claim was overwhelming. Besides the positive testimony of the plaintiff and his son, through whom the transactions in Central Traction stock were conducted, the various receipts and other writings which emanated from the defendant were almost, if not quite, conclusive, in favor of the plaintiff's contention and against that of the defendant. The opening receipt upon which the first purchase was made was to E. B. Thompson, Sr., and all the other receipts for money paid to the defendant's firm, and they were numerous, were to E. B. Thompson. But when the wheat transactions were commenced, and until they were closed, all the letters were addressed to E. B. Thompson, Jr. Now the wheat purchases were not commenced until many months after the last purchase of Central Traction was made. The last of the stock purchases was made on April 18, 1891, and the first purchase of wheat was not made until January 27, 1892. The earliest letter given in evidence from the defendant's firm in relation to wheat was addressed to "E. B. Thompson, Jr." dated March 18, 1892, and notified him that in pursuance of *his* instructions they had that "day sold for your account and at your risk, 10 thousand May wht. 84 in stop." Every subsequent letter containing similar notices was addressed in the same way, and the transactions were declared to be made, "for your account and at your risk." This being the state of the correspondence in relation to both accounts it would follow, almost as a matter of course, and with the highest persuasive force, that the defendant and his firm (which was changed during the transaction) knew perfectly well that there were two persons with whom they were dealing,

one named " E. B. Thompson " for whom all the purchases of
Central Traction were made, and the other named " E. B.
Thompson, Jr.," for whom all the wheat transactions were made.
It is not necessary to repeat, or even to indicate, the positive
and emphatic testimony of both the father and the son, who
testify that all the transactions in Central Traction were for
the account, and with the money and the securities of the father,
and that the defendant's firm was fully notified of this at the
very beginning, when the first deposit was made. And also
the equally positive testimony of both, that all the transactions
in wheat were made at the sole instance of the son, and for his
account only, and that the father had no knowledge of them
whatever. It is enough to know that there was an abundance
of such testimony in the case, that it was all in parol, and hence
was for the consideration of the jury exclusively, and that in
no aspect of the case would it have been at all proper to with-
draw the evidence from them with a binding instruction for the
defendant. A perusal of the testimony satisfies us that the ver-
dict was fully warranted by the testimony.

These views dispose of the first assignments of error.

The answer of the learned court below to the defendant's sec-
ond point was undoubtedly correct. The point was too broad
as was said by the court. A mere authority from the father to
the son to purchase stock for the father, and that being known
by the defendant's firm, would certainly not justify the latter
in allowing the son to withdraw money from the account for his
private use for any purpose. Nor can the fact that the father
allowed the son to draw out some of the money and use it for
himself operate as a general sanction for all the son's acts, nor
clothe him with the authority of a general agent.

The third point of the defendant was affirmed. The addi-
tional answer by the court was entirely favorable to the defend-
ant. It gave him the opportunity to get a verdict if he could
convince the jury that the two accounts were for the benefit of
the same person. What was said about that person being the
son was entirely correct in a legal sense, and was the natural
comment which the whole contention of the defendant, that it
was all intended for the son, would draw from the court. But
there was no denial in the answer that if the person intended
in the point was the father, the result of nonliability would

follow.   The great stumbling block in the defendant's way still remained, to wit, the hypothesis that the two accounts were for the benefit of the same person.   The jury manifestly did not believe anything of that kind, nor is it possible to see how they could have entertained such a belief.   The whole drift of the defense was the contention that the two accounts were for the benefit of the son, and not of the father.   It was to that aspect of the case that the mind, both of the court and the jury, was directed, and it was very natural for the court to so interpret the meaning.   If the point was intended to include the plaintiff in the category " of the same person," candor would require that idea to be more explicitly conveyed.   Otherwise the generality of the phrase is misleading.   Even if the court were technically in error in omitting to attract the attention of the jury to the proposition of the point as applied to the father, instead of the son, we would not reverse for such a reason, but would hold the omission of the court to be due to the want of clearness in the point.   But the court was not in technical error because the point was flatly affirmed.

Judgment affirmed.