Opinion by
Orlady, J.,
This action of replevin was instituted to recover from the Third National Bank of Philadelphia two bonds of the Mobile, Jackson and Kansas City Railroad Company, which bonds came into the possession of the Third National Bank under the following circumstances: In April, 1904, the plaintiff was negotiating with the Integrity Title Company of Philadelphia to extend for the period of one year a loan to the Vandegrift Construction Company, in order to assist the latter company in raising $100,000 for the purpose of completing the West Chester, Kennett and Wilmington Railroad. This negotiation was pending between the plaintiff company (acting through its President, Charles E. Levy), the Integrity company, and the Vandegrift Construction Company. The Third National Bank of Philadelphia was a creditor of the Vandegrift Construction Company in the sum of $28,500, and held $27,000 of the bonds of the West Chester, Kennett and Wilmington Electric Railway Company as security therefor; and on account of a default in the payment of interest under the contract between these parties, the Third National Bank had advertised said bonds for public sale on April 20, 1904 at twelve o’clock, noon. On April 12, 1904, the president of the plaintiff company called at the Third National Bank of Philadelphia and had a conversation with its cashier, in which the relation of the plaintiff company to the Vandegrift Construction Company was explained, as well as the agreement existing between the plaintiff company and the Integrity Trust Company, whereby the plaintiff company was to put up the railroad bonds of the Mobile, Jackson and Kansas City Railroad and other securities on which to borrow the $100,000. This conversation was preliminary to a further interview to be arranged for later in which the transaction was to be consummated; the relation of the Third National Bank as a creditor of the Vandegrift Construction Company being well known to the president of *280 the plaintiff company, and the relation of the plaintiff company to the general enterprise of building the West Chester, Kennett and Wilmington Railroad Company, being equally well known to the defendant bank. At the interview between the president of the plaintiff company, and the defendant’s cashier, the authorized representative of the Vandegrift Construction Company was present; and it was explained to the defendant company’s cashier that the bonds of the Mobile, Jackson and Kansas City Railroad Company would be used by the plaintiff company in furthering the enterprise for equipment and extension, after which explanation the defendant’s cashier replied, “Well, that is the only intelligent conversation I have had regarding this matter. I have had a great many promises, but nothing has been ever carried out, and I am sick and tired of it, and I want to get through with it.”
On April 19, Mr. Levy, by reason of an accident, was prevented from coming to Philadelphia to complete the arrangement above outlined, and in his stead sent one Daniel B. Ely as the special agent of the plaintiff, with written instructions defining and limiting his authority in regard to the transaction. On April 20, Mr. Ely delivered to the defendant company two negotiable coupon bonds for $1,000 each, of the Mobile, Jackson and Kansas City Railroad Company, for which the defendant bank gave a receipt on its formal letter head, as follows: “Received, Philadelphia, April 20, 1904 of Daniel B. Ely, representing the Interstate Securities Company of New York two bonds for $1,000 each, of the Mobile, Jackson and Kansas City Railroad Company, as security for interest on the loan of the Vandegrift Construction Company amounting to $28,500. W. Clifford Wood, Assistant Cashier.” The interest due at that time was $1,011.80 on the indebtedness of the construction company to the bank, and in consideration of the delivery to the bank of the two bonds, the electric railway company bonds were withdrawn from sale.
On the following day the president of the plaintiff company notified the defendant bank that Ely had exceeded his authority in handing over the bonds, and that he, Ely, had with him at the time they were delivered to the defendant bank, *281 specific written instructions as to how he was to proceed; further, that the bonds were placed in his hands in trust, to be used with other bonds for the exclusive purpose of obtaining a loan under the terms of an agreement between the plaintiff and the Yandegrift Construction Company, and he made a demand for a return of the bonds, which was refused.
The plaintiff then brought the present action in replevin, and on the trial a verdict in favor of the defendant was directed by the court, with a special finding that at the time the writ was issued, as well as at the date of the verdict “the defendant held the said bonds mentioned in the writ as security for the payment by the plaintiff to the defendant of the sum of $1,011.80 with interest from April 20, 1904, and that from time to time the defendant had collected the semiannual interest upon the bonds amounting to $300, which sum should be credited on the amount for which the said bonds are held as security, and that upon this date the plaintiff would be entitled to receive possession of the said bonds upon the payment of the sum of $864.22 to the defendant, and that the value of the said bonds was $2,000.”
The testimony of Levy was not contradicted, no official of the defendant bank being called as a witness, and this testimony with the correspondence between the parties must determine the correctness of the verdict as directed by the court. The principal question is, what knowledge did the bank have, or was presumed to have, of the authority of Ely to pass to it the two bonds in question. This was the first transaction between the parties, and at the primary negotiation between them, the plaintiff gave full information of the general scope of the enterprise in which it, as a corporation, was engaged, so that when Ely presented himself to the bank on April 20, the bank must be'conclusively presumed to have known that he was the special representative and agent of the plaintiff company, which was not in any way liable for the Vandegrift Construction Company’s debt to the bank; and further, that the bonds which he at that time delivered, belonged to the plaintiff corporation. It also knew that as to the plaintiff, the construction company was an independent third person. It does not appear *282 that any inquiry was made by the company of Ely as to his authority, or that Ely disclosed to the bank the letter of instructions which had been given to him, limiting his authority, but the fact remains that the parties dealt with each other with sufficient knowledge of the facts, that it was incumbent upon the bank to ascertain what authority he, Ely, had, to surrender to the bank the property of the plaintiff company. The receipt given refers to Ely as “representing the Interstate Securities Company, New York,” and the bonds are designated as “security for interest on the loan of the Yandegrift Construction Company.”
The general rule as to agents of corporations, is that a corporate agent, like the agent of an individual, can make only such contracts as he is expressly authorized to make, or such contracts as pertain to the duties which the corporation imposes upon him: 2 Cook on Corporations (5th ed.), sec. 720. And the bank in dealing with Ely when representing the plaintiff company, and pledging its property as security for the debt of a third person, was bound to make inquiry as to the scope of his authority: Rafferty v. Haldron, 81* Pa. 438; Thompson v. Sproll, 179 Pa. 266; Buffalo Loan Trust, etc., Co. v. Medina Gas, etc., Co., 162 N. Y. 67; Story on Agency, sec. 78. The bank dealt with Ely not as if he were the agent and representative of a corporation, but as though the transaction was personal to him, and as though it did not know that the bonds he offered and finally delivered to it, were not the property of the plaintiff. It was held in In re Estate of William H. Kern, 176 Pa. 373, that where a trustee of bank stock in violation of his trust pledges the same for anyone’s benefit, to one constructively notified of the trust, any inquiry short of an actual inspection of the trust deed, will not entitle the pledgee to hold the same; and where the defendant knew or ought to have known that the securities it received even though they were negotiable by delivery, belonged to another, it had no reason to suppose that the real owner of the securities was willing to have them used to pay another’s debt; and in Fisher v. Brown, 104 Mass. 259, it was held immaterial that the defendant in that case did not know who the owner was. In the case at bar, the bank *283 had actual knowledge, as shown by its receipt, that the plaintiff was the owner of the bonds.
On the trial the learned judge practically held that the bank was a holder for value in the usual course of business. This was not warranted under the evidence, as this was the first transaction between the parties, and from the undisputed testimony the bank had knowledge, not only of the ownership of the property, but of the relation of the plaintiff company to the debtor of the bank. Nor does the fact that the bonds were negotiable change the duty of the bank in accepting them as a pledge for the debt of a third person. The bank was not an innocent third party receiving negotiable securities. The securities were not received in the usual course of business, but were taken with full notice of the true ownership. Had inquiry been made or had the authority of Ely been exhibited to the bank, it would have disclosed fully, clearly and explicitly that his action in passing to the bank the securities of the plaintiff was not only without authority, but in direct violation of it: Wilson v. Wilson-Rogers, 181 Pa. 80; Loudon Savings Fund Society v. Hagerstown Savings Bank, 36 Pa. 498; 1 Randolph Commercial Paper, sec. 388; Mount Morris Bank v. Gorham, 169 Mass. 519. The plaintiff could not be bound by any suggestion of apparent authority by its agent, for the reason that so far as disclosed by the record, there was no inquiry as to the extent or degree of his authority. He was not questioned on the subject, but was dealt with as an unquestioned owner in the light of knowledge that he was but a representative. Whatever his official corporate title may have been, whether manager of a bond department, or director in the plaintiff company, is not material in the light of the evidence; and the plaintiff conceding that he was but an agent, must assume the burden of showing the extent and authority of his right to speak for his principal.
The judgment is reversed and a venire facias de novo is awarded. »