E. S. BROWNFIELD & BROTHER, Respondents, v. PHŒNIX INSURANCE COMPANY OF LONDON, Appellant.

### Kansas City Court of Appeals, May 23, 1887

1. PRINCIPAL AND AGENT—GENERAL AGENCY FOR EFFECTING INSURANCE CONTRACTS.—Where certain persons were constituted general agents for effecting insurance contracts at a certain place and vicinity, with power to deliver policies and receive the premiums, *third* parties dealing with them would not be affected by any special instructions given, or limitations placed upon their agency, by the principal, *unknown* to such *third persons* at the time.   But if the third persons were aware in any manner of limitations or conditions they were bound by them.

2. PRACTICE — INSTRUCTIONS — ISSUES. — Instructions should be so framed as to present the case to the jury *on all the evidence,* and not on a partial view of it.   Instructions must be predicated of the *evidence* and not upon suppositions and inferences.

3. —— EVIDENCE—COMPETENCY OF CORRESPONDENCE BETWEEN IN-
SURERS AND THEIR AGENT.—Correspondence between the insurers
and their agents, such as passed between them, *prior to the
notice of loss,* would be *competent* evidence ; but any correspond-
ence or statements by them *after* such notice would be clearly in-
admissible.

APPEAL from Audrain Circuit Court, HON. ELIJAH
ROBINSON, Judge.

*Reversed and remanded with directions.*

Statement of case by the court.

This action is based on a policy of insurance, alleged
to have been issued by defendant on the nineteenth day
of May, 1885, to insure plaintiffs' stock of goods against
loss by fire for the period of one year next thereafter.
It appears, from the evidence, that Early & Booth were
the local agents of the defendant company, whose prin-
cipal office was at Chicago. These agents were located
at the town of Centralia in Boone county. The evidence
tended to show that said agents were invested with the
powers of general agents for that locality, and its
vicinity ; but with instructions from their principal, re-
specting hazardous risks, situated in the country, and
the like, to furnish applications with specifications for
the company's approval.

The plaintiffs' evidence tended to prove that, on the
nineteenth day of May, 1885, they applied to these
agents for insurance on their stock of goods, in a store
house about twelve miles distant from the town of
Centralia ; that they had hitherto insured other property
with such agents, in other companies, and had not been in
the habit of making out any applications in form ; that
the agents asked them to sign, in this instance, an ap-
plication, which they were given to understand was a
matter of mere form, for the agents' use ; that they signed
it ; and the amount of the premium was agreed upon,
amounting to $17.50 · that, when the matter of making
payment of said premium was mentioned they told the

agents, one of whom was the president of the bank, that they had the money in his bank for the purpose of paying such premium; and thereupon, the agent said, that is all right, that they could pay it at some other time, or something to that effect; that, as plaintiffs were in a hurry to go home, the agents told them they would make out the policy and send it to them by mail; and that they would be insured from that date.

On the morning of the twenty-fifth of May following the said stock of goods was destroyed by fire, about six o'clock in the morning. One of plaintiffs took a witness along with him, and by nine o'clock appeared in Centralia, and going to the bank asked for the policy of insurance. It seems that the policy of insurance had not, in fact, been made out; but one of the agents, who attended to this branch of the business, the execution of policies, sat down in his room and wrote out the policy, and handed it to plaintiff, who, thereupon, asked the agent if he had money enough in bank to pay the premium; and on being told that he had, drew a check for the amount, and handed it to the agent. After the policy was delivered over, the plaintiff informed the agents that the insured property had burned up that morning. There is some contradiction, as to what was said by the respective parties on this startling announcement, the defendant's evidence tending to show that the agents, before the policy was delivered, informed the plaintiff that they had a letter from the company requiring more evidence about the risk before it would be accepted, and that the plaintiff might take out the policy, as he seemed in a hurry, with the understanding that if the risk was not accepted the policy should be returned. This was denied by the plaintiffs. The defendant's evidence further tended to show that this risk had been declined by other companies when applied to, and that, on this account, when the plaintiffs made the application in question, on the nineteenth day of May, the agents informed them that they would have to make

application in writing, to be forwarded to the company for acceptance ; and that, thereupon, the plaintiffs signed the written application, read in evidence by defendant, which they at once forwarded to the company, at Chicago. The company, prior to the twenty-fifth of May, wrote to the agents for further information before the risk would be taken ; and at the time of the fire the company had not approved it.

There was other evidence ; but the foregoing is sufficient to fully explain the points determined in the opinion. The jury returned a verdict for the plaintiffs. From the judgment rendered thereon, the defendant has appealed.

W. W. FRY and W. O. FORRIST, for the appellant.

I. There was a *fatal variance* between the *proof and the pleadings*. Plaintiffs' action was to enforce the collection of the policy. They secured a verdict on a prior verbal contract claimed to have been completely executed May 19, 1885, brought out by the proof alone. *Smith v. Shell*, 82 Mo. 215 ; *Henning v. Ins. Co.*, 47 Mo. 425 ; *Davis v. Randolph*, 3 Mo. App. 454 ; *Hubbard v. Railroad*, 63 Mo. 68.

II. The court erred in refusing to admit in evidence *the letters and telegram* offered by defendant. It was a material question as to whether defendant accepted plaintiffs' application. A part of the correspondence had been admitted on that question, and defendant was entitled to the entire correspondence. 1 Greenl. on Evid. 201. (*a*) The letters were also admissible as a part of the *res gestae*. *Ins. Co. v. De Wolf*, 8 Pick. (Mass.) 56. (*b*) These letters between the agents and defendant were the same as if between the parties to the suit, as Early & Booth, in this correspondence, were agents of plaintiffs. *Ins. Co. v. Ins. Co.*, 8 Mo. App. 408 ; *Lee v. Smith*, 84 Mo. 309.

III. Plaintiffs' *first instruction*, wherein it pro-

vides that, if the agents, "as such had, authority to make contracts of insurance, receive premiums, and issue policies · for defendant," submitted to the jury *questions of law*, and was therein erroneous. It left it with the jury to determine what were "contracts of insurance," and the meaning of "receive premiums and issue policies." *Dyer v. Brannock*, 2 Mo. App. 432.

IV. *Instructions which are not predicated on the pleadings and evidence*, or which *ignore an issue or a material fact* in the case, are erroneous. *Crews v. Lackland*, 67 Mo. 619 ; *Bank v. Murdock*, 62 Mo. 70 ; *Raysdon v. Trumbo*, 52 Mo. 38. (*a*) Plaintiffs' *first* instruction charged the jury that, if the agents "had authority to make contracts of insurance, receive premiums and issue policies for the defendant," etc., then find for plaintiffs. This authority they did have in "non-hazardous risks," and it was a question of fact for the jury, whether they had this authority in plaintiffs' case, which was a ' hazardous risk," without first obtaining from defendant the acceptance of an application. Plaintiffs had signed an application to defendant for insurance, thereby admitting that the risk was hazardous, and the transaction was merely a request for insurance. Under this state of facts, had the agents authority to bind the company, before the application was accepted, was a material question of fact wholly taken from the jury by plaintiffs' said instruction. (*b*) Again, this instruction further provides that, if said agents, on May 19, "agreed with plaintiffs to insure their said stock of goods," etc., then plaintiffs were entitled to recover, ignoring the real issue as to whether the alleged contract was conditional or not. Had the agents authority to bind the defendant in this case, it being a hazardous risk? Was the contract conditional? Was the application accepted? were the issues of fact raised by the proof, and contested in the case, and these issues were studiously ignored by plaintiffs' instructions. The jury might have *found all the facts presented in this in-*

*struction to have been true,* and yet, in fact, plaintiffs, under the proof and pleadings, *were not entitled to recover.* This instruction was made prominent by plaintiffs' third instruction, which refers to it, and makes it a part of the third. There was a *conflict of testimony,* and the instructions should have presented all the material facts and issues raised, thereby, to the jury.

V. The two instructions offered by defendant, and refused by the court, correctly presented the issue, whether plaintiffs' application had been accepted, and the court erred in refusing them. And the addition to defendant's instruction, by the court, is subject to the same objection as the *first* clause of plaintiffs' *first* instruction.

VI. The last clause of defendant's *seventh* instruction reads as follows : " Unless the jury believe, from the evidence, that said agents of defendant, Early & Booth, had authority to make contracts of insurance and issue policies, *without first obtaining* from defendant *the acceptance of application ;*" while plaintiffs' first instruction directs the jury that, if the agents " had authority to make contracts of insurance, receive premiums, and issue policies, for the defendant," then, in either case, defendant was bound. *These two instructions are contradictory.* Plaintiffs' said first instruction was made conspicuously prominent, and was obviously erroneous, and *the jury was misled by it,* and returned a verdict in accordance with it.

MACFARLANE & TRIMBLE, for the respondents.

I. There was *no variance* between the proof and the pleadings. The suit was *on a contract of insurance,* as evidenced by the policy. A judgment was sought and secured on the policy alone. The policy being delivered after the negotiations were completed, related back to the time of such completion, and was *proper evidence* of the contract. May on Insurance, sects. 43, 44; *Lightbody v. Ins. Co.,* 23 Wend. 18; *Baldwin v.*

*Ins. Co.*, 56 Mo. 151; *Keim v. Ins. Co.*, 42 Mo. 38. The case of *Lightbody v. Ins. Co.* (*supra*) is, in many particulars, like the one at bar. The fact that the plaintiffs proved, in chief, the negotiations and conversations between plaintiffs and defendant's agents, which preceded and led to the execution and delivery of the policy, *did not constitute a variance* between the proof and the pleadings ; such proof was proper under the *peculiar nature of the answer.* Whilst it would have been *proper in rebuttal,* yet no objection was made to its *introduction in chief.*

II. The court did not err in refusing to admit in evidence the letters and the telegram which passed between the *defendant's office at Centralia* and *its office at Chicago,* after both offices had been *informed of the fire.* Even if it were a "material question as to whether the defendant's agents at Chicago accepted plaintiffs' application," still the plaintiffs cannot be bound by what such agents *wrote to one another,* as to that fact, *after they* had *knowledge of the fire.* If insurance companies could prove their non-liability by the declarations of their own agents, after loss had occurred, there would be few losses paid. We cannot understand why counsel assert that Early & Booth were the *agents of plaintiffs* in this correspondence. There certainly was no evidence given or offered, tending to show such a fact, and the legal presumptions are all the other way.

III. Persons authorized to agree upon the terms of insurance, receive premiums and issue policies, must be regarded as the *general agents of the company* with full power to bind the company. *Post v. Ins. Co.*, 43 Barb. 351; *Angell v. Ins. Co.*, 59 N. Y. 171; May on Insurance [2 Ed.] 139. And *private* general instructions, *limiting* their authority as to territory or otherwise, must be *brought home to the insured,* otherwise he will not be bound by it. Wood on Insurance, 851 *et seq.*

IV. Agents with *general powers,* as these were

shown to be, may *waive* the cash payment of the premiums, and the validity of the contract will not be affected by credit being given until the delivery of the policy. *Baldwin v. Ins. Co.*, 56 Mo. 151; Wood on Fire Ins. [2 Ed.] 71, 77, 78. But in the case at bar, the premium was paid long before the policy was issued; money was left in the bank for that purpose, and was taken out and appropriated when the policy was delivered. The right of the agents to *waive* actual payment of the premium before policy was delivered is recognized by instructions asked for defendant and given by the court.

V. The court did not err in modifying the instruction numbered *seven* asked by defendant. It entirely ignored the theory of plaintiffs and the *refused* instruction was *properly* refused for the same reason. The instructions *given* for defendant fully and fairly submitted its case to the jury.

VI. The instruction numbered *one*, given at the request of the plaintiffs, is *not open to the objections* which are urged against it. *It did not submit questions of law to the jury*, nor did it *leave it with the jury to determine* the meaning of technical terms or phrases. (*a*) There was *no evidence* tending to show that the Centralia agents did not have authority to assume this risk, whether hazardous or non-hazardous. If they had no such authority there was nothing to show that the plaintiffs had notice of such want of authority. The question as to *whether they had authority or not* to bind the defendant in hazardous risks was not in the case and was properly omitted from the instruction. No such issue was presented. (*b*) There was *no evidence* that the contract sued on *was conditional.* The plaintiffs claimed that an absolute contract was made on the nineteenth of May and the policy afterward delivered in evidence of it. The defendant claimed that *no contract of any kind*, conditional or otherwise, was made at that time, but that an *application* was received only for transmission to Chicago. It was not a question in

the case as to whether the contract was conditional. The question was *whether any contract was made.* There was evidence on the part of defendant tending to show that the policy was delivered conditionally, and not in pursuance of a previous promise to deliver it; but that issue was fully submitted by the instruction number one given for plaintiffs, and instruction number six given at the request of the defendant. (*c*) It was not a question in the case as to whether the application for insurance was accepted at Chicago, for it was undisputed that the Chicago office did not accept it. The only question was, whether Early & Booth *made the contract of insurance*, or whether they did not make it; *and that question was fairly and fully submitted to the jury by the instructions taken as a whole.* *Karle v. Railroad*, 55 Mo. 476; *Whalen v. Railroad*, 60 Mo. 323; *Newcomb v. Blakely*, 1 Mo. App. 289; *Russell v. Ins. Co.*, 55 Mo. 585.

Philips, P. J.—It is quite clear, from the evidence, that Early & Booth were general agents for effecting insurance contracts, at Centralia and vicinity, with power to deliver policies and receive the premiums. In such cases third parties dealing with them would not be affected by any special instructions given, or limitations placed upon their agency, by the principal, unknown to such third parties at the time. This rule is founded on a sound policy, as it prevents fraud, and promotes confidence in such dealings. *Perkins v. Wash Insurance Co.*, 4 Cow. 645; *Lightbody v. North American Insurance Co.*, 23 Wend. 22; *Nicholson v. Golden*, 27 Mo. App. —.

If, therefore, on the nineteenth day of May, the plaintiffs entered into negotiations and completed a contract of insurance with Early & Booth, as agents, without any notice or suggestions calculated to put them on the inquiry, that the written application was to be forwarded to the company for its acceptance, they would not be affected or bound by the private instructions of

the defendant to said agents. And if the contract was otherwise completed, by the payment of the premium on that day, or its payment then was waived, the plaintiffs were entitled to have the policy when it was delivered, and they, in the absence of fraud, were under no obligation to inform the agents of the loss by fire before the delivery of the policy. *Baldwin v. Chouteau Insurance Co.*, 56 Mo. 153, and cit.

On the other hand, the converse of this proposition must equally hold good, that, although Early & Booth, as general agents, at Centralia, were clothed with such apparent authority, yet, if, in respect of property situated as this was, and regarded as especially hazardous, the instructions of the agents required applications to be forwarded for the company's acceptance, and the plaintiffs were apprised of this fact, or if they were aware, in any manner, at the time they made the application, that it was to be sent, by the agents, to the company for acceptance, there was no contract concluded until the risk was accepted by the company ; and the delivery of the policy, by Early & Booth, would not bind the defendant.

The action being based on the policy of insurance, and not on a contract for insurance, unless the plaintiffs were entitled to demand the policy on the twenty-fifth day of May, on a complete contract theretofore made, there can be no recovery in this action. *Whittaker v. Ins. Co.*, 29 Barb. 312 ; *Ins. Co. v. Walser*, 22 Ind. 73; *Lingenfelter v. Ins. Co.*, 19 Mo. App. 264.

The defendant's evidence was quite explicit to the effect that, as the efforts to insure this property in other companies had failed because the risk was deemed extra hazardous, defendant's agents informed plaintiffs that they would have to make written application to be forwarded to the company for its acceptance. And, as the plaintiffs' own evidence showed that they had not, hitherto, been required to make such application, the fact that it was required in this instance is a strong circum-

stance confirmatory of the agents' testimony that they told the plaintiffs that they "would send in the application for acceptance or rejection by the company, and, if accepted, they would issue a policy and send to them." The application in writing was made and signed by plaintiffs, and forwarded to the defendant. When the fire occurred the same had not been accepted, but the company was awaiting further information.

If the defendant's evidence is to be credited by a jury, the policy was improperly delivered by the agents, and the plaintiffs cannot recover. The defendant was clearly entitled to have this hypothesis submitted to the jury for a direct response.

The chief objection to the series of instructions given by the court is, that they did not present the whole case under all the evidence. They were too partial to the plaintiffs' theory, predicated alone upon their evidence. Without approving the instruction in the form as presented by the defendant, when the court undertook, as it did, to reform or reconstruct the instruction, it should have so framed it as to present the case to the jury on all the evidence, and not on a partial view of it. The instruction nearest approaching the presentation of the case, based upon defendant's evidence, is the following: ·

"The court instructs the jury that if plaintiffs' property was destroyed by fire before plaintiffs' application was accepted, then the verdict must be for the defendant, and the jury are instructed that there must have been some affirmative acceptance of the insurance asked for to have bound the defendant; and, if there was further information asked for as to said property, and such information was not received by defendant before the fire, then there was no acceptance, and the verdict must be for defendant, *unless the jury believe from the evidence that the agents of defendant, Early & Booth, had authority to make contracts of insurance,*

*and issue policies, without first obtaining from defendant the acceptance of applications.*"

The portion in italics was added by the court. By this qualification it is apparent that the court, in effect, withdrew from the consideration of the jury the question of fact, as to whether the plaintiffs made the application, as testified by the agents, to be forwarded to the company for approval. Although the jury might have been disposed, from all the facts and circumstances in evidence, to believe that the application was made for the purpose stated by the witnesses for the defence, and that plaintiffs knew, or had reason to believe, that it was to be forwarded, subject to defendant's acceptance or rejection, yet this instruction, in effect, told the jury that this would not avail the defendant as a defence, if they believed, aside from this special transaction, that Early & Booth "had authority to make contracts of insurance, and issue policies, without first obtaining from defendant the acceptance of applications."

It ignores the well settled rule of law, that a presumption must give way when the truth appears. Although Early & Booth had the apparent authority to make contracts of insurance, and issue policies in evidence thereof ; yet, if in this particular transaction they were advised of the necessity of making the application, and that it was to be forwarded for defendant's acceptance, they had no right to rely longer on the general apparent authority. Taking a witness with them, and obtaining the policy on the morning of the twenty-fifth, after the fire, in the manner they did, gives strong color to the correctness of the defendant's evidence. At all events this was a question of fact for the jury, and the defendant was entitled to have this issue passed upon by the jury. And the court erred in this respect.

I.  As the case is to be remanded, we will suggest that so much of the second instruction, given on behalf of plaintiffs, as authorized the jury to find a waiver of

payment of premium on the nineteenth day of May, from the fact "that said agents would themselves take sufficient money from plaintiffs' deposit in bank to pay the premium," be omitted, unless the evidence, on a further trial, be different from this record. There was nothing in what transpired between the parties, respecting the payment of the premium, to 'warrant a jury in finding that plaintiffs authorized Early & Booth to transfer the amount of such premium from plaintiffs' bank account. Ordinarily, this would require a check from the depositor; and there is nothing in evidence to justify a verdict predicated of such an extraordinary method as the instruction implied. Instructions must be predicated of the evidence. The plaintiffs themselves evidently contemplated no such liberty with their bank account. On the twenty-fifth of May, when they went to pay the premium they inquired if they had sufficient money in bank for such purpose, and drew a check therefor.

II. Defendant assigns for error the action of the trial court in rejecting certain correspondence between the defendant and Early & Booth. We perceive no objection to the action of the court in this respect. Such correspondence, and the like, as occurred between the parties prior to the notice of the loss by the defendant would be competent evidence; but any correspondence or statements by them after they had such notice would be clearly inadmissible; otherwise they could make evidence to suit the emergency.

The other judges concurring, the judgment of the circuit court is reversed, and the cause is remanded, with directions to proceed in conformity with this opinion.