MOUNT MORRIS BANK *vs.* C. L. GORHAM & another.

Worcester.   October 9, 1897. — November 23, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Draft — Principal and Agent — Ostensible Authority — Power of Attorney — Notice to Purchaser — Evidence — Instructions.*

At the trial of an action upon a draft purporting to be accepted by the drawee through a person who was his agent, the extent of the latter's authority was in controversy. The judge refused certain requests for rulings, and instructed the jury, in substance, that the drawee would not be liable simply because, if he had been sharper or more careful, he would have discovered his agent's course of dealing, but he must actually have known of acts of the agent conveying to the public the impression that his authority was greater than it was in fact, before the drawee's silence could be held to sanction the agent's course, and to give him ostensible authority to continue it. *Held,* that no error appeared.

It is only within the scope of an agent's employment that his principal must look out for the agent's misconduct when there is nothing but the employment to give warning.

If a draft is accepted by the drawee through an agent "p. p. a.," which may be found to mean "per power attorney," these letters are notice to a bank discounting the draft that the agent depended for his authority to sign upon a written document, and the bank takes its chances if it does not call for the production of the power; and, in an action on the draft, the power of attorney is admissible in evidence.

CONTRACT, upon two drafts discounted by the plaintiff. At the trial in the Superior Court, before *Dewey,* J., the jury returned a verdict for the defendants; and the plaintiff alleged exceptions, which appear in the opinion.

*C. M. Thayer & W. S. B. Hopkins,* for the plaintiff.

*R. Hoar & F. P. Goulding,* for the defendants.

HOLMES, J.   This is an action upon two bills purporting to be drawn upon the defendants by Haines and Company, payable to the order of the drawers and to be accepted by the defendants in

the form " C. L. Gorham & Co. p. p. a. Chas. A. Williams." Williams was an agent of the defendants, who had charge of their shop, but the defendants denied that he had any authority to sign drafts, and at the trial put in a written power of attorney which is admitted not to have authorized him to do it. Their evidence tended to prove that these drafts were issued by Williams in pursuance of a scheme between Haines and him, by which a series of similar drafts had been issued, discounted, and their payment provided for, without the defendants ever having known anything about the matter. The defendants were regular purchasers of pianos from Haines and Company, but their case was that Williams was not authorized to pay for them otherwise than by. check on the Central National Bank of Worcester. The plaintiff contended that Williams's authority had been enlarged beyond the written power of attorney, and that, whether this had been done or not, the defendants were chargeable with notice of Williams's course of dealing, on the ground that at least they ought to have known of it and might have discovered it by reasonable care, and therefore that Williams had ostensible authority to sign as he did. The defendants had a verdict, and the case is here on exceptions.

1. The first exception is to the refusal to instruct the jury that " as far as third persons are concerned the apparent authority must be regarded as the real authority, where they have no notice to the contrary." It appears from the charge, and from the instruction with which we shall deal under the next mentioned exceptions, that the judge did not deny, and did let the jury understand, that ostensible authority is actual authority. Probably he declined this form of instruction as ambiguous and possibly misleading in view of the nice questions raised by the case as to what would amount to ostensible authority. It is to be observed that the instruction can have been asked only with reference to the plaintiff. For the plaintiff's evidence as to Haines and Company was that the defendants had told them in terms that Williams had full authority, so that so far as the plaintiff should put its claim on the validity of the drafts while still in Haines and Company's hands, the ground was the defendants' actual consent to Williams's course. If Haines's testimony on this point was disbelieved, the natural inference was

that Haines and Company were acting in collusion with Williams, not that they honestly relied on an ostensible authority. But it would seem, from the tenor of the bill of exceptions and of the argument, that the plaintiff did not rely on Haines and Company, but stood on its own position as a purchaser without notice.

2. The second exception is to the refusal to rule that "the scope of an agency is to be determined, not alone from what the principal may have told the agent to do, but from what in the exercise of ordinary care and prudence he might know the agent is doing." With this may be mentioned the next request, "If an agent's authority is limited and does not include the right to use the credit of the principal, yet if the principal had by his conduct held him out as having such authority, or had by his acts, declarations, or silence given reasonable cause to people to believe that the agent had such authority, then the principal will be bound by the act of the agent." This last the court gave, modified by inserting the word "knowingly" before "given reasonable cause to people to believe." This did not mean, as it is taken by the counsel for the plaintiff, that the principal must know the effect of his agent's conduct, but that he must know what had been the conduct of his agent. The difference between the court and the plaintiff's counsel, aimed at if not quite accurately hit by the change, and brought out more fully and more clearly in the charge, was that the court thought and told the jury that the defendants would not be liable simply because, if they had been sharper or more careful, they would have discovered Williams's course of dealing, but that they must actually have known of acts of his conveying to the public the impression that his authority was greater than it was in fact, before their silence could be held to sanction his course and to give him ostensible authority to continue it. We are of opinion that the judge was right with reference to the evidence in this case. In order to test the matter, we must assume that an attempt is made to hold the defendants to contracts to which they never have consented in fact, and which were made by a third person acting wholly outside the scope of the authority intentionally conferred. The question is not what facts would be sufficient, if known to the defendants, to give them notice that

the third person was assuming to bind them, nor what facts would be evidence of agency, — such as that a particular unlawful sale was made in the defendants' shop by one employed to sell there, — but the question is whether the defendants can be held irrespective of any knowledge beyond that of the existence of the agency, on the ground that if they had been more careful they would have known. If people were held under such circumstances, neglect of their own interests would be treated as a wrong to the public. As against the public the possibility of culpable negligence had not arisen. The defendants were not bound to anticipate, from the mere fact of employment in one direction, that their employee would go beyond the scope of his employment wrongfully in another direction. It is only within the scope of an agent's employment that an employer must look out for the agent's misconduct, when there is nothing but the employment to give warning. The defendants' counsel refer to the doctrine of ratification, which requires actual knowledge of the material facts on the part of the principal. *Combs* v. *Scott*, 12 Allen, 493, 497.

3. The next request with which we have to deal was that there was no evidence to charge the plaintiff with notice of any irregularity or want of authority in the issuing of the drafts. The signature " p. p. a." probably meant, and certainly might have been found to mean, " per power attorney." If this was the meaning, not only was this request rightfully refused, but the question of ostensible authority heretofore dealt with was at an end. The letters were notice to the plaintiff, on the face of the bill, that his agent depended 'for his authority to sign upon a written document, and the plaintiff took its chances if it did not call for the production of the power. *Alexander* v. *Mackenzie*, 6 C. B. 766. *Attwood* v. *Munnings*, 7 B. & C. 278. See *Stainback* v. *Bank of Virginia*, 11 Grat. 269 ; *Stainback* v. *Read*, 11 Grat. 281, 286. It was sufficiently favorable to the plaintiff that the judge did not instruct the jury, as matter of law, that the plaintiff took with notice.

4. In this connection we may as well dispose of the exception to the admission of the power of attorney. The reference on the face of the bill would be enough to justify it, without more. But in general, of course, a man who is sued upon a contract made in

his name is not precluded from showing the limits of the powers expressly conferred by him, merely because the plaintiff has a right, and may attempt to show that the powers were enlarged by the defendant's subsequent conduct. The statement by the judge, that if the instrument was given it was the sole measure of Williams's authority, plainly referred only to the moment when the instrument was given. The jury were allowed to find that his authority had been enlarged afterwards by the defendants' conduct. It is suggested for the plaintiff that it did not appear that Williams had any knowledge of the document, but only that it was deposited with the bank on which he was authorized to draw checks. It is enough to say that we think that the suggestion is not fairly open on the exceptions, which assume the power to have been effective as between the parties to it.

5. The last request was that there was no evidence that the drafts were not given for value received. This naturally would be understood to refer to the issuing of the drafts by acceptance, not to their subsequent transfer to the plaintiff. There was evidence that the acceptance was merely for the accommodation of Haines. It is not necessary to consider other objections to the request. The foregoing are all the questions argued.

*Exceptions overruled.*