## BUEHNER CHAIR COMPANY *v.* FEULNER, BY NEXT FRIEND.

[No. 20,431. Filed March 15, 1905.]

1. APPEAL AND ERROR.—*Subsequent Appeal.*—*Law of the Case.*—The law of the case as declared in a former appeal does not control a decision on the sufficiency of the evidence on a subsequent appeal where there is additional material evidence on the subsequent trial. p. 371.
2. MASTER AND SERVANT.—*Unguarded Machinery.*—*Factory Act.*—*Contributory Negligence.*—Where the evidence shows that plaintiff,

Buehner Chair Co. *v.* Feulner.

15 years old, was set to work with an unguarded bit to drill holes in chair backs, and that after drilling the necessary holes he removed such backs by passing one hand under the bit, and while so doing his shirt sleeve caught on such bit by reason of its having no guard, and his arm was severely injured, the question of contributory negligence is for the jury. p. 371.

3. Negligence.—*Contributory.*—*When a Question of Fact for the Jury.*—Where there is any dispute as to the controlling facts, and any room for different conclusions by reasonable men, the question of contributory negligence is for the jury. p. 372.

4. Master and Servant. — *Factory Act.* — *Violation.* — *Servant's Knowledge.*—The fact that the servant knows of the violation of the factory act by the master does not make the servant assume the risk. p. 374.

5. Same. — *Factory Act.* — *Dangers.* — *Contributory Negligence.* — Where the servant is subjected to a constant danger on account of the master's violation of the factory act, the question of the servant's contributory negligence is ordinarily one of fact for the jury. p. 374.

6. Evidence.—*Explanations of Testimony at Former Trial.*—Explanations by the witness of his testimony at a former trial are admissible at a subsequent trial. p. 374.

7. Trial.—*Instructions.*—*Violation of Factory Act.*—*Harmless Error.* —Courts will hesitate to reverse on the ground of instructions regarding the duty of the master to guard machinery, though the instructions be erroneous, where the evidence of the master's violation of the factory act seems conclusive. p. 374.

8. Appeal and Error.—*Supreme Court Rules.*—*Instructions.*—*Brief.* —Appellant's brief should set out the instructions complained of in accordance with Supreme Court rules in order that each judge may be able to comprehend the exact question involved, and a statement of the legal effect of the instructions is not sufficient. p. 375.

From Warrick Circuit Court; *Elbert M. Swan,* Judge.

Action by Henry Feulner by his next friend John Feulner against the Buehner Chair Company. From a judgment on a verdict for plaintiff for $2,700, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Affirmed.*

*John E. Iglehart, Edwin Taylor* and *A. J. Clark,* for appellant.

*Charles B. Harris, Oris J. Van Pelt, Frank E. Monfort* and *G. V. Menzies,* for appellee.

Vol. 164—24

GILLETT, J.—This is a second appeal. See *Buehner Chair Co.* v. *Feulner* (1902), 28. Ind. App. 479. Under the paragraph of complaint upon which the cause was tried appellant was charged with negligently failing to guard the bit, set-screw and journal of an upright boring machine. There was a verdict and a judgment for appellee. It appears from the evidence that said machine had for some weeks been used by appellee, as an employe of appellant, in its factory in Evansville, in boring holes in pieces of wood designed to be used in the backs of chairs. The bit, set-screw and journal were operated by steam, and revolved at the rate of 1,400 revolutions per minute. They were held up by a heavy spring which was attached to a joist above, so that the bottom of the bit was from six to seven inches above the platform of the machine, except as the appliance was temporarily lowered by the pressure of a foot of the operator upon a lever, which was beneath the platform. The material on which appellee was working consisted of curved oak boards, twenty inches long and six inches wide. Nine holes were required to be bored in each. In boring these holes the board would be pushed from left to right, and it was appellee's practice, when the ninth hole was bored to take his foot off the lever, thus letting the journal, set-screw and bit ascend, as indicated, and to use both hands in passing the board out from under the bit and in placing it upon a pile upon the platform. This, owing to an obstructing guide, involved passing the left hand or arm beneath the bit. At the time in question, appellee, a boy of fifteen years, was pursuing this course, and it appears that his left arm came in contact with the bit, and he received a very serious injury.

Upon the former appeal the cause was reversed by the Appellate Court because of the uncertainty of the evidence as to the cause of the injury, and for the further assigned reason that appellee was guilty of contributory negligence, the court observing that appellee had testified that he was

not looking at the bit when he received the injury, and that there was no need of his putting his arm or his hand under the bit. Upon the last trial it appeared very directly and clearly that the sleeve of appellee's shirt was caught by the bit, or by the set-screw, as he was removing the piece of wood, and that in that way his arm was brought in contact with the bit. Appellee explained his answer on the former trial that he "was not looking at the bit," by the following statement: "I meant I wasn't just looking directly at the bit. I was looking at all of it. I was looking to where I was going to put the piece of wood, and watching the bit as best I could." Appellee offered evidence upon the last trial that he was taking out the chair back in the manner that the man who put him to work had removed the material in instructing him, and that he had seen the other men working at the machine in that way. He also testified to facts tending to show that the foreman had observed that the witness was taking out the pieces as indicated. Evidence was also introduced on his behalf to the effect that in removing the chair back from under the bit and from behind the guide it was necessary, in the proper performance of the work, to pass the left hand under the bit. The ground assigned by the witnesses for this opinion was that in handling a piece with one hand the material was more likely to come in contact with the set-screw or bit, and to strike the operator in the face.

1. It is clear that with the additional evidence which was before the jury upon the last trial the question as to the legal sufficiency of the evidence as a whole is in nowise ruled, as the law of the case, by the decision of the Appellate Court upon the former appeal. *Dodge* v. *Gaylord* (1876), 53 Ind. 365; *Eckert* v. *Binkley* (1893), 134 Ind. 614; 2 Van Fleet, Former Adjudication, p. 1317.

2. When the surrounding physical circumstances are considered in connection with the direct testimony, it is very plain, under appellee's theory of the case, that the bit

caused his injury, and that the defect in the machine consisted in the absence of a guard. Regarding the evidence as a whole, we are of the opinion that the question as to whether appellee was guilty of contributory negligence was a question for the jury. Here the triers of the fact had before them not only the direct testimony as to how the accident occurred, but they also had a description of the machine and of its workings, and the testimony of witnesses as to whether the manner in which appellee was operating it was proper. The fact of appellee's comparative immaturity, and that his teaching and observation as to the use of the machine were calculated to influence his judgment, were circumstances proper to be considered in determining whether he was negligent.

3. It was said by Mr. Justice Hunt, in discussing the question as to when negligence is a question for the jury: "Upon the facts proved in such cases, it is a matter of judgment and discretion, of sound inference, what is the deduction to be drawn from the undisputed facts. Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man equally sensible and equally impartial would infer that proper care had been used, and that there was no negligence. It is this class of cases and those akin to it that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proved, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer con-

clusions from admitted facts thus occuring, than can a single judge." *Railroad Co.* v. *Stout* (1873), 17 Wall. 657, 21 L. Ed. 745.

In *Finegan* v. *London, etc., R. Co.* (1889), 53 J. P. 663, it appears that Denman, J., indulged in the following observations, upon an appeal wherein the Queen's Bench reversed Lord Coleridge in a negligence case, in which he had nonsuited the plaintiff: "I think to make questions of law out of what are in their real nature questions of fact for a jury does harm and not good, and it tends to unsettle the law rather than to settle it, and I am confirmed in that view, I think, by that which is certainly an undoubted but deplorable fact, that whenever questions of negligence are argued and put forward as questions of pure law then the difficulty arises, and in most cases they divide judges of great experience and great acuteness more than any other questions which have ever been discussed in courts of justice."

It is only where there is no dispute as to the controlling facts, and no room for different conclusions upon the part of reasonable minds as to the question of contributory negligence, that it becomes a question of law for the court. *Town of Albion* v. *Hetrick* (1883), 90 Ind. 545, 46 Am. Rep. 230; *Mann* v. *Belt R., etc., Co.* (1891), 128 Ind. 138; *Baltimore, etc., R. Co.* v. *Walborn* (1891), 127 Ind. 142; *Cincinnati, etc., R. Co.* v. *Grames* (1893), 136 Ind. 39; *Malott* v. *Hawkins* (1902), 159 Ind. 127; Beach, Cont. Neg. (3d ed.), §§447-451; *Belton* v. *Baxter* (1874), 58 N. Y. 411; *Hart* v. *Hudson River Bridge Co.* (1880), 80 N. Y. 622; *Popp* v. *New York, etc., R. Co.* (1889), 7 N. Y. Supp. 249; *Nugent* v. *Boston, etc., Railroad* (1888), 80 Me. 62, 12 Atl. 797, 6 Am. St. 151; *Longenecker* v. *Pennsylvania R. Co.* (1884), 105 Pa. St. 328; *Leavitt* v. *Chicago, etc., R. Co.* (1885), 64 Wis. 228, 25 N. W. 4; *Cleveland, etc., R. Co.* v. *Crawford* (1874), 24 Ohio St. 631, 15 Am. Rep. 633; *Johnson* v. *Missouri Pac. R. Co.*

(1886), 18 Neb. 690, 26 N. W. 347; *Bennett* v. *Syndicate Ins. Co.* (1888), 39 Minn. 254, 39 N. W. 488.

4. It was held by this court in *Monteith* v. *Kokomo, etc., Co.* (1902), 159 Ind. 149, 58 L. R. A. 944, that under the act of 1899 relative to the guarding of machinery the mere knowledge of the workman that the statute has been violated does not make the risk an assumed one.

5. Distinguishing between this element and contributory negligence, as was done by this court in *Indiana, etc., Oil Co.* v. *O'Brien* (1903), 160 Ind. 266, we deem it clear that the question of contributory negligence in this case was for the jury. While it may be theoretically true that it was possible for appellee to pass his hand and arm under the bit without touching it, yet, as counsel for appellee state, the case seems to be but an illustration of the proposition of fact that the performance of a task involving constant exposure to an immediate danger is likely, sooner or later, to eventuate in injury. For the court to say, as a matter of law, in a case of this kind, that there was contributory negligence, and that therefore there could be no recovery, would be to leave but little room for the operation of a beneficent statute.

6. Appellant's counsel complain of the action of the trial court in permitting appellee to explain certain statements made by him in his conditional examination, and in testfying as a witness upon the first trial. We have read the previous testimony given by appellee with care, and we find no statement of such a definitive character that an explanation of his meaning might not fairly clear up. But whether or no, appellee was at least entitled to give explanations of his meaning in making the prior statements, and to have his explanations submitted to the jury. In dealing with this subject in its instructions the trial court went quite as far in appellant's favor as it was warranted in doing.

7. Considering as a whole the instructions which were

given upon the subject of guarding the set-screw and bit, we do not think that they were calculated to lead the jury to infer that the obligation so to do was absolute and independent of all circumstances of negligence and of the practicability of guarding the machinery. We should hesitate about reversing the cause on this account, even if an erroneous instruction had been given upon this subject, as the evidence of appellant's violation of the statute, when considered in the light of the physical facts, seems to us to have been conclusive.

8.  Moreover, appellant has not complied with rule twenty-two of this court, in respect to setting out the instructions complained of or their substance. *Perry, etc., Stone Co.* v. *Wilson* (1903), 160 Ind. 435; *Chicago, etc., R. Co.* v. *Wysor Land Co.* (1904), 163 Ind. 288; *Penn Mut. Life Ins. Co.* v. *Norcross* (1904), 163 Ind. 379. The purpose of the rule is to enable the judges, other than the one to whom the record has been distributed, to familiarize themselves, from an inspection of the briefs, with the merits of the questions presented on appeal. This can not be done where, as here, there has been no attempt to set out the instructions complained of or their substance. The mere statement of what counsel conceive to be the legal effect of an instruction, which gives neither the language thereof, nor its substance, and which does not purport to give either, cannot be accepted as "a concise statement of so much of the record as fully presents" the "error and exception relied on," as required by said rule. If we may accept appellant's brief as a compliance with said rule as respects instructions two and eleven tendered by appellant and relating to the subject of contributory negligence, it is enough to say that that branch of the case was fairly covered by the instructions given.

We find no error. Judgment affirmed.