MASSACHUSETTS BONDING AND INSURANCE COMPANY *v.* BANKERS' SURETY COMPANY ET AL.

[No. 13,540.   Filed January 6, 1932.   Rehearing denied April 8, 1932.   Transfer denied July 20, 1932.   Petition to reconsider denied March 17, 1933.]

*Young & Linder, Carl Seet* and *R. L. Ewbank,* for appellant.

*W. E. Cox, H. M. Kean, Samuel A. Lambdin* and *Norman E. Patrick,* for appellees.

NEAL, J.—Appellee, plaintiff below, State of Indiana on the relation of Charles D. Summers, instituted this action against William V. Weathers, James W. Case, Bankers Insurance Company, Maryland Casualty Company and the Massachusetts Bonding and Insurance Company for the recovery of certain moneys advanced by the relator for the construction of a gravel road. The contract for the construction of the road had been awarded to Weathers and Case by the Board of Commissioners of DuBois County. This is the second appeal.

See *Massachusetts Bonding and Insurance Company* v. *State ex rel. Summers* (1925), 82 Ind. App. 377, 149 N. E. 377.

The relator, as plaintiff, filed a complaint in four paragraphs. Appellant's demurrer was sustained to the second paragraph of complaint and appellant filed an answer of six paragraphs and a cross-complaint against all of its co-defendants; defendants (appellees herein), Banker's Surety Company and Maryland Casualty Company, demurred to appellant's cross-complaint, which was overruled and then filed answer of three paragraphs to the cross-complaint and also answer in nine paragraphs to the complaint of relator. The case was tried by jury, which returned a verdict against defendants William V. Weathers, James Case and the Massachusetts Bonding and Insurance Company and awarded damages in the sum of $4,483.93. The jury found for the defendants, Banker's Surety Company and the Maryland Casualty Company, as against the plaintiff and the Massachusetts Bonding and Insurance Company. The Massachusetts Bonding and Insurance Company filed motion for a new trial and the court rendered judgment on the verdict.

Inasmuch as the pleadings are very lengthy and the only question presented arises by the action of the court in overruling appellant's motion for a new trial, we will not attempt to state the substance of the several paragraphs of complaint, answers thereto, cross-complaint and answers.

A brief resume of the salient facts may be helpful in an understanding of this case and explain the multiplicity of pleadings. On November 6, 1911, appellees, Weathers and Case, who for many years had been engaged in contracting for the construction of roads, pursuant to invitation, as provided by law, submitted their bid to the Board of Commissioners of DuBois County for

the construction of a free gravel road known as the Frank Zimmer Road in the named county. Weathers and Case bid the sum of $19,249. At the time the bid was submitted, a construction or bid bond as provided by law was filed, executed by Weathers and Case, and the name, Bankers Surety Company of Cleveland, Ohio, By Bayless Harvey, attorney-in-fact, appeared as surety thereon. The contract was awarded by the Board of Commissioners to Weathers and Case on November 6, 1911. The bond contained the usual provisions reading in part as follows: "Now, therefore, if the said Board of Commissioners should award them the contract for said work, and the said William V. Weathers and James Case shall promptly enter into a contract with said Board of Commissioners for said work and shall well and faithfully do and perform the same in all respects according to the plans and specifications adopted by the Board of Commissioners and according to the time, terms, and conditions specified in said contract to be entered into and shall promptly pay all debts incurred by them in the prosecution of said work, including labor, materials furnished and for boarding laborers, then this obligation shall be void, otherwise to remain in full force and effect." The following day, Bayless Harvey, who signed the bond as attorney-in-fact, for the Bankers Surety Company, by letter addressed to the company, informed it that he was enclosing application of Weathers and Case for a bond in the penal sum of $38,498 which was given in connection with the bid of Weathers and Case for the contract to construct the aforesaid mentioned road, the bond to be dated November 6, 1911, and that he also was enclosing a copy of the bond and a check in the sum of $77 for the premium, less his commission. The Banker's Surety Company received the letter with enclosures mentioned, and on November 9, 1911, addressed and mailed to Bayless Harvey, Weathers and Case and

the Board of Commissioners of DuBois County, and each of them separate letters, of the following tenor: That Bayless Harvey, who had placed the name Bankers Surety Company on the bond as attorney-in-fact for the company, held no power of attorney from the company authorizing Harvey to execute the bond; that it repudiated the action of Harvey in signing the bond as their agent; that it refused to accept the premium and was returning the same to Weathers and Case. Each of the above named party or parties as the case may be, received the letter so addressed to them. On November 15, 1911, the Bankers Surety Company was informed, by letter signed by Richard M. Milbourn, County Attorney, that the Board of Commissioners had set December 4, 1911, for the investigation of the validity of a bond for $38,898 executed by Bankers Surety Company for William Weathers and James Case. Thereafter, the Board of Commissioners demanded another bond, and on January 2, 1912, a bond signed by appellant was executed by Weathers and Case-and appellant and was accepted by the Board of Commissioners. The bond contained the identical stipulations as above set forth in the previous bond of Weathers and Case and Bankers Surety Company. On December 14, 1914, Maryland Casualty Company took over the business affairs of the Bankers Surety Company which was then in liquidation and agreed to "be directly liable to any creditor or claimant for any obligation debt or claim due from the Bankers to any such creditors or claimants."

On August 23, 1907, the Bankers Surety Company and Bayless Harvey entered into a written contract of agency. The stipulations contained therein which are of importance in the instant case are as follows: "Sub-Agency Contract. This contract entered into . . . by and between the Bankers Surety Company . . . hereinafter called the Company, and Bayless Harvey

of Paoli, Indiana, hereinafter called the Agent. Witnesseth: That the Company being engaged in the transaction of a general surety business and desiring to operate in the following territory, to-wit: Orange County, Indiana, does so long as it shall be permitted to operate herein by the Insurance Department of said State, and so long as it shall be mutually agreeable to the parties hereto, engage the said Agent to solicit business, collect and remit the premiums therefor and attend to any and all other concerns of such business which he may be directed so to do, according to such instructions and directions as he may from time to time be given. The Company engages to supply all necessary stationery, books, instructions and licenses at its own cost. The agent engages to devote himself actively to the interests of the Company. . . . The compensation herein provided to be paid by the Company to said Agent shall be in full of all services and interests in said Company's business in the territory prescribed. . . . There shall be retained out of all premiums collected through and during the continuance of said Agency in full payment of all interests of said Agent in the business of said Agency the following percentages, to-wit. On all general surety business originating in the territory above alloted to said Agency 20%. The remaining portion less the monthly payment directed by the Company to be made to its attorney connected with the said Agency shall be remitted not later than the 10th of each month to the Company's office at 219-220 Lemcke Bldg., Indianapolis (O. D. Walker, Mgr.). . . . The business of the Company to be transacted through said Agency shall be a general surety business and the Agent shall have a right of commission on all business emanating and accepted and paid for in such agency during the continuance of such Agency. . . ." This agreement was signed by Bayless Harvey and the Bankers Surety Com-

pany, by "F. B. Wilber, Dp. Agt. A. D. & E. as usual."
The letters A. D. & E. were explained to be a reference
to clauses A. D. & E. in power of attorney executed to
Bayless Harvey.

Bayless Harvey was a resident of Paoli, Orange
County, Indiana. The construction bond in question was
signed by Bayless Harvey as "attorney-in-fact" for the
Bankers Surety Company in his office in Paoli, Indiana.
Harvey had in his possession the seal of the Bankers
Surety Company. He also, at the time, had in his office
the power-of-attorney, executed by the Bankers Surety
Company. Harvey had, on several occasions, executed
surety bonds, including road construction bonds to be
used and which were used in Orange County, and the
Bankers Surety Company made no objection. One
Harry B. Sprague, manager of the contract department
of the Maryland Casualty Company and formerly con-
nected with the Bankers Surety Company, testified that
the power of agents for the Bankers Surety Company,
at that time, "would be evidenced in their agency con-
tract with the Company and by the power of attorney
granted them by the Company."

Neither the power of attorney nor a copy of such was
introduced in evidence. The evidence was to the effect
that the original was lost, but that a copy of the same
had been made and was in the hands of the witness
Sprague. The power of attorney was not attached to
the bond in question at the time such bond was executed
and delivered to Weathers & Case. There is no evidence
to the effect that the power of attorney or a copy thereof
was ever filed with the Board of Commissioners of Du-
Bois County or that it was exhibited to them. There is
no evidence whatever before us as to contents of the
power of attorney.

The road was in litigation for a period of time. Weath-
ers was advanced in years and authorized Case to take

charge of the work in connection with the building of the road. Case was in need of funds to prosecute the work and made an arrangement with the relator to furnish money with which to proceed with the construction of the road and have sufficient funds to meet the pay-roll, and was to be paid five per cent for all the money that was loaned by him under the aforesaid agreement. The money was used to discharge labor and material bills, the relator depositing money in the bank in the name of James Case and then checked out to meet the obligations incurred in the construction of the road. The relator furnished the sum of $7,138.14 and received from the estimates due Case and Weathers from DeBois County, $4,380, which left a balance of $2,758.14. Demand was made for the payment of the money December 1, 1917, and interest thereon to date of verdict, March 2, 1927, amounts to $1,530.70 which makes a total due of $4,288.90.

Appellant's first proposition is that error was committed in the assessment of recovery as being too large. The verdict of the jury was $195.03 more than the amount due the relator. This court can determine from the evidence the correct amount due relator, and opportunity can be given appellee relator to make a remittitur of the excess as determined by this court, consequently the error will not cause a reversal of the judgment. *Schafer* v. *Smith* (1878), 63 Ind. 226; *Chicago, etc., R. Co.* v. *Brown* (1901), 157 Ind. 544, 60 N. E. 346; *City of East Chicago* v. *Gilbert* (1915), 59 Ind. App. 613, 108 N. E. 29, 109 N. E. 404.

It is urged that as to the relator Summers, the evidence is insufficient to support the verdict and that the verdict, therefore, is contrary to law. Appellant asserts that this court, in the former appeal pronounced the law of the case and that the court determined as a matter of law on the undisputed evidence, that relator was not

entitled to recover and that in this appeal the law of the case should control. Therefore, the court should declare the evidence not in conflict and that relator was not entitled to recover.

It is the law that the decision of the Appellate Court in the former appeal is the law of the case. If the facts essential to a recovery by the plaintiff were the same, in this appeal as presented in the former, the law of the case would govern and the judgment would necessarily be reversed. However, additional facts appear in evidence and are of such probative force that we cannot say as a matter of law that the material facts are not controverted and that the money so loaned by relator was a loan only to Case and that the moneys so paid by relator were to be used in a joint enterprise of Case and relator. The evidence favorable to appellee discloses that the money so loaned by relator was to Case acting for and on behalf of the partnership of Weathers and Case and was to be used and was used to discharge obligations incurred at the time of the construction of the road and in discharge of the labor and material bills. *Dodge* v. *Gaylord* (1876), 53 Ind. 365; *Eckert* v. *Binkley* (1893), 134 Ind. 614, 33 N. E. 619; *Beuhner Chair Company* v. *Feulner* (1905), 164 Ind. 368, 73 N. E. 816; *Alerding* v. *Allison* (1907), 170 Ind. 252, 83 N. E. 1006, 127 Am. St. Rep. 363; *Fifer* v. *Rachels* (1906), 37 Ind. App. 275, 76 N. E. 186.

The bond as heretofore stated given by Weathers and Case with appellant as surety thereon was conditioned that the obligors would "pay all debts incurred by them in the prosecution of the work including labor, materials furnished and for boarding laborers thereon." Here the evidence sufficiently discloses that the labor and material bills paid with money furnished by appellee, the relator, were for labor performed and materials furnished the partnership of Weathers and

Case in the construction of the road. Under such a state of facts, the appellees Weathers and Case and appellant were liable to relator for the money so furnished under the stipulations of the bond. *Fry* v. *P. Bannon, etc.* (1913), 179 Ind. 309, 101 N. E. 10; *Illinois Surety Co.* v. *State ex rel.* (1919), 69 Ind. App. 450, 122 N. E. 30; *Title Guaranty & Surety Co., etc.,* v. *State ex rel.* (1915), 61 Ind. App. 268, 109 N. E. 237, 111 N. E. 19; *Kimmel* v. *State ex rel.* (1921), 75 Ind. App. 168, 128 N. E. 708, 130 N. E. 239; *Southern Surety Co.* v. *Merchants' and Farmers' Bank* (1931), 203 Ind. 173, 176 N. E. 846.

We have examined the several instructions given by the court to which appellant severally excepted as applicable to the issues between appellant and appellee relator, and also the instructions tendered by appellant and which the court refused to give, to which refusal appellant properly reserved exceptions. We do not deem it necessary to enter into a discussion of the several very general propositions made in regard to the same. Suffice it to say, however, the instructions given were applicable to the issues and evidence and of the instructions refused. Nos. 1, 15, and 16 were mandatory instructions, and, under the evidence, it would have been error if any one or all of such instructions had been given as requested by appellant, and instruction No. 5 so tendered by appellant was fully covered by instructions Nos. 2, 3, 4, and 6 and each of them tendered by appellant and given by the court.

As to the several points made by appellant directed to separate errors made by the court in the admission of certain items of evidence, we are of the opinion that no reversible error can be predicated thereon.

Appellees, Bankers Surety Company and the Maryland Casualty Company, tendered instructions Nos. 5 and 9, which instructions were given by the court and excepted to by appellant. These instructions proceeded

upon the theory that an insurance agent, whose authority was limited to a specified territory, could not bind his principal by risks taken outside of the specified territory even against uninformed third persons, unless the principal had, by its acts, ratified the acts of the agent.

It is unquestionably the general rule by the weight of authority that where an insurance agent is authorized to take a risk in one place, it is presumed that he had authority to take such a risk anywhere, and a risk taken by him outside of his real territorial jurisdiction will be binding upon the company *in the absence of knowledge or notice upon the part of the assured that the agent's powers in this respect have been restricted.* As was said by Lord, C. J., in the case of *Hahn* v. *Guardian Ins. Co.* (1893), 23 Ore. 577, 32 Pac. 683, 37 Am. St. Rep. 709: "The assured has the right to rely upon the agent's apparent authority, and, *unless the circumstances are such as to put him upon inquiry, he is not bound to inquire as to the agent's special powers.*" (Our tialics.) And a general agent may take risks outside of the locality to which his agency is limited, *where the insured has no knowledge of such limitation.* In fact, it has been said that an "agent authorized to take risks in one place is assumed to have authority to take them anywhere. . . ." (Our italics.) Wood on Insurance, §529, says: "Where an agent is authorized to take a risk in one place, it is presumed that he had authority to take them anywhere . . . " In *Hardwick* v. *State Ins. Co.* (1891), 20 Ore. 547, 26 Pac. 840, 844, it was said that "where insurance companies deal with the community through a local agent, persons having transactions with the company are entitled to assume, *in the absense of knowledge as to the agent's authority,* that the acts and declarations of the agent are as valid as if they proceeded directly from the company." (Our italics). In *Brownfield* v. *Phoenix Ins. Co.* (1887), 26 Mo. App. 390,

it was held that as defendant's agents were constituted general agents for a designated locality, the fact that their authority was restricted as to extra hazardous risks beyond specified limits, was not binding upon the insured *unless notice thereof was given him.* But as it appeared that the insured had notice of the restriction, he could not recover. In the case of *Standard Fire Ins. Co.* v. *Buckingham* (1919), (Tex.), 211 S. W. 531, 534, a case wherein it was contended that there was no presumption the agent had authority to write a policy of insurance to cover a risk other than at a certain designated town. The court said: *"In the absence of information that the agent had no authority* to write insurance except at the place where his office was located, the insured may presume that he did have authority to cover property located elsewhere." (Our italics). Again it has been said that "the power of an agent cannot be limited by special, private instructions so as to affect a contract of insurance, unless the insured had notice, or there is something in the nature of the business or circumstances of the case to indicate the agent acted under such special instructions." 1 May, Insurance (3rd. ed.) §130, says that a general agent, authorized to effect insurance for a particular place "may, nevertheless, insure property located beyond the geographical limits of his agency, and within those of another agent. Private instructions restricting his agency cannot affect the relation between the insured and the insurers. . . . He may also bind his principal even though he act contrary to his instructions, if what he actually does is fairly deducible from his authority as general agent, the instructions which he violated not being known to the insured. *If such agent fails in his duties to his principal it is no fault of the insured."* (Our italics.) Joyce on Insurance (2nd ed.) Vol. 1, §395a, in speaking of the power of a general agent, says: "As such agent he may take risks outside of the

locality to which his agency is limited where the insured has no knowledge of such limitations." See also, *Lightbody* v. *North American Insurance Co.* (1840), 23 Wend. (N. Y.) 18.

It is apparent from an examination of the above authorities that the theory of the above instructions Nos. 5 and 9 is not in harmony with the law as above set forth. Such instructions were, at least, misleading.

Appellant earnestly contends that Sections 5691, 5692, and 5693 Burns 1926 (§§5, 6 and 7, Acts 1885, p. 54), make the agent of a foreign insurance company the general agent of the company for the whole state unless the company has brought knowledge to the one dealing with the agent that the agent's authority is otherwise limited; that when the Bankers Surety Company qualified to do business in Indiana and appointed Bayless Harvey as its agent and gave him its corporate seal, any one dealing with him (Bayless Harvey) as such agent, had full right to rely upon the acts and representations of the agent, and, under §§5691, 5692 and 5693, supra, had full right and authority to believe that Bayless Harvey was the general agent for the Bankers Surety Company for the entire State of Indiana. Conceding, but in no manner deciding, that the construction and interpretation placed upon §§5691, 5692, and 5693, supra, by appellant, are correct, we could not agree with appellant's application of the law to the particular facts in question in the instant case.

It is to be noted that when the bond in question was executed, it was signed "Bankers Surety Company, Cleveland, Ohio, by Bayless Harvey, attorney-in-fact." An attorney-in-fact "is any private or special agent appointed for some particular or definite purpose; not connected with a proceeding at law, by formal authority, called a letter or power of attorney, in which is expressed the particular act or acts

for which he is appointed and the extent of his authority." American & English Ency. of Law (2nd ed.), V. 3, p. 281. Black's Law Dictionary, p. 105, defines an attorney-in-fact as "A private attorney authorized by another to act in his place and stead, either for some particular purpose, as to do a particular act, or for the transaction of business in general, not of a legal character. *The authority is conferred by an instrument in writing called a 'letter of attorney.'*" (Our italics). And again it has been said that an attorney-in-fact is an agent whose authority is conferred by a written instrument. Mechem on Agency (2nd. ed.) V. 1, p. 43, §71. *White* v. *Furgeson* (1901), 29 Ind. App. 144, 64 N. E. 49, says that "by 'attorneys-in-fact' are meant persons who are acting under a special power created by deed." And a power or letter of attorney has been defined as "the instrument by which the authority of one person to act in the place and stead of another as attorney-in-fact is set forth." 18 Am. & Eng. Ency. of Law, 871; *White* v. *Furgeson, supra.*

When Bayless Harvey signed the bond in question as "attorney-in-fact," the Board of Commissioners of Du-Bois County and all parties connected with such transaction, as a matter of law, were compelled to take notice that Harvey's authority as agent was limited and special in nature, and that such authority was limited by an instrument in writing and that he depended upon the authority, special and limited in nature, delegated to him in such written instrument to execute the bond in question. See Mechem on Agency (2nd. ed.), p. 496, §707; Story on Agency (9th. ed.), p. 88, §72; *Mount Morris Bank* v. *Gorham* (1897), 169 Mass. 519, 48 N. E. 341, 342; *Craighead et al.* v. *Peterson* (1878), 72 N. Y. 279, 28 Am. Rep. 150.

Appellees, Bankers Surety Company and Maryland Casualty Company denied the execution of the bond

under oaths. When it filed its separate and several answers of *non est factum* to each the complaint and cross-complaint, the burden rested upon plaintiff and cross-complainant to prove by competent evidence that Bayless Harvey had the authority to execute the bond in question for and on behalf of the Bankers Surety Company. *Baum* v. *Palmer* (1905), 165 Ind. 513, 76 N. E. 108.

In the instant case, the authority by which Bayless Harvey attempted to execute the bond was in writing and all parties connected with the transaction were given notice to that effect. "Where the authority is created by a written instrument, the writing must, in general be produced, and the nature and extent of the authority thereby conferred must be determined by the court." *White* v. *Furgeson, supra.* In *The London Savings Fund Society* v. *Hagerstown Savings Bank* (1860), 36 Pa. 498, 78 Am. Dec. 390, the court said in part: "It is apparent, that the great question raised upon the record had reference to the character and extent of Easton's authority, as agent of the defendants. The party who avails himself of the act of the agent must, in order to charge the principal, prove the authority under which the act is done. If the authority be created by power of attorney, or other writing, the instrument must in general be produced; and since the construction of writings belongs to the court, and not to the jury, the fact and scope of the agency are, in such cases, questions of law, and are properly decided by the judge." In *Mount Morris Bank* v. *Gorham, supra,* the court said: "The signature 'p.p.a.' probably meant, and certainly might have been found to mean 'per power attorney.' If this was the meaning, not only was this request rightfully refused, but the question of ostensible authority heretofore dealt with was at an end. The letters were notice to the plaintiff on the face of the

bill that the agent depended for his authority to sign upon a written document, and the plaintiff took its chances if it did not call for the production of the power."

The record discloses that neither the plaintiff nor cross-complainant chose to introduce the written instrument—the power of attorney, although a copy of the original was produced by the Bankers Surety Company and offered to be made a part of the evidence in the case. Further, the record discloses objections made to its introduction by the parties upon whom rested the burden of proof.

We recognize that exceptions to the general rule exist. In Mechem on Agency, V. 1, §774, we find the following language used: "But except where writing is indispensable, the principal may, notwithstanding this general rule, expressly extend or change the agents' powers by parol; or he may hold the agent out as possessing greater powers than those conferred by writing; or he may so conduct himself as to be estopped from asserting that they were not greater." In *Hartford Fire Insurance Company* v. *Wilcox* (1870), 57 Ill. 180, the court, approving the language used by Story on Agency, §§76, 77, 79 and 83, said: "It is a general rule, that where the agency is created and conferred by a written instrument, the nature and extent of the authority must be ascertained from the instrument itself, and can not be enlarged by parol evidence of the usage of other agents in like cases, or of an intention to confer additional powers; because that would be to contradict or vary the terms of the written instrument. In connection with this doctrine, it is often stated that an implied authority can not, in general, arise where there is express authority in writing; for the maximum is *expressum facit cessare tacitum* . . . But the doctrine in each . . . case must be understood with qualifications and limitations. . . .

When parol evidence seeks to establish a subsequent enlargement of the original authority, or to give an authority for another object, or where the express power is engrafted on an existing agency, affecting it only *sub modo* to a limited extent, the maxim loses its force and application. . . . Another qualification is where there was a written authority to the agent but the principal, by his declarations and conduct, has authorized the conclusion that he had in fact given more extensive powers to the agent than were conferred by the writing, then, as to all persons dealing with such agent, upon the faith of such apparent authority, the principal will be bound to the extent of such apparent authority. Subject to these reasonable qualifications and limitations, the doctrine is unquestionably true that an express written authority can not be enlarged by parol evidence, or an authority be implied where there exists an express one." And the same case, quoting from 2 Greenlf. Ev., §63 with approval, says: "If the authority of the agent is in writing, the *writing* must be *produced* and proved."

Assuming that appellant was attempting to come within the exception to the general rule, we are of the opinion that it wholly failed, in face of the several answers of *non est factum,* to make a *prima facie* case of Bayless Harvey's authority to execute the bond in question.

Even though instructions 5 and 9 were erroneous, nevertheless, the verdict of the jury on the issues joined between plaintiff, cross-complainant and Bankers Surety Company was the only possible verdict under the evidence.

Judgment affirmed upon the condition that appellee relator file a remittitur in the sum of $195.03 as of the date of judgment within 60 days, otherwise the judgment is reversed.