## PENN BANK *v.* FURNESS & Others.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF PENNSYLVANIA.

Argued March 31, April 1, 1885.—Decided April 13, 1885.

A, B, & C, being partners in business, and all believing the firm to be solvent, C withdraws. A & B pay C a fixed sum as his capital and continue the business. They borrow money of a bank on the notes and responsibility of

the new firm, part of which is used to pay to C his capital, and then fail, owing the money so borrowed. It turns out that the old firm was insolvent at the time of the dissolution, and C contributes towards the discharge of its liabilities an amount in excess of the amount of capital so drawn out by him. In a suit in equity by the bank to charge the old firm with the money loaned to the new firm : *Held*, That this could not be done, as the transaction was entirely between the bank and the new firm.

Bill in equity. The facts which make the case are stated in the opinion of the court.

*Mr. Nathan H. Sharpless* for appellants.

*Mr. Samuel Dickson*, (*Mr. E. G. Platt* was with him) for appellant, Francis Brinley, administrator.

*Mr. Charles Hart* for appellees, James T. Furness, Joshua P. Ash, William H. Ash, and Dawes E. Furness.

MR. JUSTICE FIELD delivered the opinion of the court.

This is a suit by the Penn National Bank to charge the firm of Furness, Brinley & Co., of Philadelphia, with moneys obtained from the bank by the firm of Furness, Ash & Co., of that city, in a discount of its paper, and used in payment of the debts of the first firm, and also to charge the defendant, Edward L. Brinley, with the moneys thus obtained by Furness, Ash & Co. which were used to pay its debt to him.

It appears from the record that for many years preceding January 1, 1878, the firm of Furness, Brinley & Co. was engaged in business as auctioneers in the city of Philadelphia, and was in good standing and credit. It consisted, up to October 1, 1878, of James T. Furness, Edward L. Brinley, Joshua P. Ash, William H. Ash, Henry Day, and Dawes E. Furness. At that time Henry Day and Dawes E. Furness retired from the firm. Soon afterwards Edward L. Brinley expressed a desire also to retire from it. An agreement was accordingly entered into between him and James T. Furness and Joshua P. Ash to the effect that he should retire, his retirement to take place as of the 1st of July, 1877, but not to be announced until the 1st of January, 1878, and that he was to withdraw

as his capital in the firm, $25,000, to be paid in monthly payments of $5,000, commencing on the 1st of December, 1877. For the payment of this amount James T. Furness and Joshua P. Ash made themselves individually liable. On the 1st of January, 1878, Brinley's retirement was accordingly announced, and a new firm was then formed, under the name of Furness, Ash & Co., consisting of James T. Furness, Joshua P. Ash, and William H. Ash, to continue the same business at the same stand, as successors of Furness, Brinley & Co. This new firm existed only till the 15th of March following, when it failed. During its continuance it obtained large discounts of its paper at the Penn National Bank, and from other parties, and the money derived from them was used by it, among other purposes, to pay the instalments of $5,000 each month to Edward L. Brinley, the retired partner. Of the amount agreed upon $20,000 were thus paid. On the retirement of Edward L. Brinley from the old firm and the formation of the new firm, the insolvent condition of the old firm was unknown to its members; but upon an examination of their books after the failure of the new firm, it appeared that the old firm was in fact insolvent on the 1st of July, 1877, and on the first day of January, 1878. The bill in the present case charges that this agreement for the retirement of Brinley, and the payment to him of $25,000, was made with knowledge of the insolvency of the old firm and upon a corrupt conspiracy between the partners to enable Brinley to fraudulently withdraw his capital from the firm, and escape liability for its debts. It also charges that the discounts of the paper of the new firm were promoted by false statements, on the part of Edward L. Brinley, to influence parties who discounted the paper, and that they were made to carry out the corrupt scheme mentioned. All the allegations of fraud and conspiracy are explicitly and emphatically denied in the answers of the defendants, and they are wholly unsustained by the proofs. Although the business of the old firm for the last years of its existence was loosely conducted, there is not the slightest evidence that any of its members, except perhaps James G. Furness, had a suspicion of its insolvent condition. He may have suspected its condition, but,

if so, he kept his suspicions to himself, in no way intimating them to the other members of the firm. He kept the accounts of the partnership, and it does not appear that any other member knew anything of them. It is clear that they believed the firm was financially sound, and not only capable of paying all its debts, but that there was a large surplus. It also appears that the plaintiff bank at the time it discounted the paper of Furness, Ash & Co. knew who composed that firm and relied entirely upon its solvency to meet its obligations.

The case, then, stands thus: Certain members of the co-partnership agreed to pay another member a fixed amount as his capital on his withdrawal from the concern, all parties believing at the time in the firm's solvent condition. The member accordingly withdraws and a new partnership is thereupon formed between the remaining members. The new firm on its own responsibility borrows money on its notes from different parties, among others from the plaintiff, who were acquainted with its members, and pays part of the capital as agreed upon to the retiring member and also some of the debts of the old firm. Soon afterwards the new firm fails, and the plaintiff bank now seeks to charge the old firm with the moneys thus loaned, which were used to pay its debts, and the retiring member for the amount due to him. We are clear that this cannot be done. The discount was a transaction entirely between the new firm and the plaintiff. No credit was given to the old firm or to the retired partner. It was not a matter between the bank and either of them. It is simply a common instance of credit given to an insolvent firm without knowledge by the lender of its insolvency ; and in the course of business the loss is to be ascribed to over-confidence in the firm's responsibility, whilst in ignorance of its true condition.

The old firm remains liable for its debts contracted whilst it was in existence and unpaid, and the retired member as a partner in that firm is liable with the other partners ; and it seems from the record, that since the failure of the new firm he has himself discharged outstanding liabilities of the old firm amounting to over $37,000, exceeding by about $17,000 the sums paid to him by the new firm. The new firm is alone

liable for the debts of its own contracting. They cannot be transferred to others with whom the plaintiff never dealt.

The case is different from those where a retiring partner draws out a portion of the capital of the concern with an agreement that the other members will pay the debts, and it turns out that the firm was at the time insolvent. There the retiring party will be held to restore the capital, so far as may be necessary to pay the debts of the concern existing at the time, and this, too, whether there was any fraud designed in the transaction or not. He cannot be permitted to remove any portion of the capital of the insolvent concern beyond the reach of its existing creditors, if necessary to satisfy their demands, nor, if there be any scheme of future fraud in the removal, beyond the reach of its future creditors. Here the defendant Brinley has paid, as already mentioned, in the discharge of the debts of the old firm, several thousand dollars more than he received as his capital in that concern from the new firm. There has been no attempt at any time on his part to avoid the liabilities falling upon him as one of the partners in that firm.

The case of *Anderson* v. *Maltby*, 2 Ves. Jr. 244, to which counsel of appellant refers as a beacon-light for nearly a hundred years in this branch of the law, differs from the one at bar in essential particulars. There upon the retirement of a partner in the firm of Maltby & Sons a fictitious account was made up, showing an indebtedness to him of several thousand pounds, which was entered upon the books of the firm. This was done without any examination of the books at the time, or valuation of the property of the firm, or calculation of its debts, and no public notice was given of the retirement of the partner, except by changing the title of the firm in the books of the Bank of England, and other books, from Maltby & Sons to Maltby & Son. The other members continued the partnership and failed. On a bill filed by its assignee, an account was decreed in favor of the new partnership against the retiring partner for the moneys thus received, owing to the circumstances of fraud attending the transaction. In deciding the case the Chancellor, after observing that when partners make up an account of profits, which do not exist, it is colorable,

said : " If at the close of the former partnership he (the retiring partner) was *bona fide* entitled, all the payments were just and legal : if he was not *bona fide* entitled to any demand, on account of the former partnership, as against the two about to form a new partnership, but that, to the knowledge and conviction of all three, was mere color, and not a real but a nominal transaction, all the payments were made not only without consideration, but upon a bad consideration, and such as a court of equity, and, I think, a court of law equally ought to condemn." This is nothing more than declaring that a suit will lie by the assignee of a bankrupt concern to compel a retired partner to account for moneys paid to him by the firm upon a fraudulent claim.

In the case at bar there was no fraudulent claim advanced. The amount to be paid Brinley was for the capital put by him into the firm of Furness, Brinley & Co., all the partners, except perhaps one of them, supposing at the time of his retirement that the firm was not only solvent, but in possession of a large surplus ; and the plaintiff is neither the new company nor its assignee, but the bank, which lent money to that company upon its supposed solvency, and now seeks to charge the parties to whom the company paid it in discharge of its obligations. Equity does not follow money thus lent into the hands of persons to whom it has been paid in discharge of obligations to them and with whom the lender had no relations.

*Decree affirmed.*