FIRST NATIONAL BANK OF PATTERSON *et al.*, Appellants, *v.* CENTRAL NATIONAL BANK, IMPLEADED, *etc.*, Respondent.

*Supreme Court, First Department, General Term, July 6, 1889.*

1. *Assignment for creditors. Preference.*—A creditor, who has been preferred in a fraudulent general assignment, can retain the moneys received from the assignee as against subsequent attaching creditors.
2. *Same.*—So a *bona fide* creditor, whether preferred or not, may receive payment of his claim from the assignee, and retain it against the judgment creditors of the insolvent debtor, though the assignment has been set aside on the ground of fraud.

Appeal from an interlocutory judgment entered upon a decision sustaining a demurrer to the complaint.

*J. J. Adams*, for appellants.

*George A. Strong*, for respondent.

VAN BRUNT, P. J.—The complaint alleges that the plaintiffs are judgment creditors with executions returned unsatisfied of the defendants, composing the firm of Halstead, Haines & Co., who, on the 12th of July, 1884, being possessed of a large amount of property, made and executed an assignment purporting to convey to their assignee therein named all their joint and individual property for the benefit of creditors with references, and a copy of said assignment is annexed to the complaint.

The complaint further alleges that the said assignment was made by the assignors with intent to hinder, delay and defraud their creditors, including the plaintiffs, and that said assignment at the suit of other creditors, has been declared

void ; that the defendant, the Central National Bank, was preferred in said assignment as a creditor of said assignors, and that such preference was paid by the assignee prior to the commencement of this action. The complaint thereupon demands judgment that the assignment be declared fraudulent and void as against the plaintiff, that a receiver be appointed, and that the money so paid to the defendant, the Central National Bank, by said assignee, be adjudged to have been paid wrongfully and in fraud of the creditors of the defendants composing the firm of Halstead, Haines & Co., and that the said defendants be compelled to account for all the property of said firm, including the said sum so paid over to the defendant, the Central National Bank, and now held by it, and that out of said property the judgment of these plaintiffs be paid, with interest and costs. To this complaint the defendant, the Central National Bank, demurred upon the ground that it does not state facts sufficient to constitute a cause of action ; upon the argument of this demurrer at special term it was sustained, and from the interlocutory judgment thereupon entered, this appeal is taken.

At the outset it is necessary to correct some erroneous views which seem to pervade the whole of the discussion of the questions involved upon this appeal upon the part of the appellant. It seems to be assumed that because the Central National Bank was a preferred creditor, that therefore some other or different rule is to be applied in considering the questions raised by this demurrer from that which would obtain had they not been such preferred creditors, and the assignment had been simply an assignment without preferences.

It is hardly necessary to discuss the question as to whether an assignment without preferences might not be void, as well as an assignment which attempts to prefer creditors. The fact that preferences are contained in the assignment makes it no more susceptible to attack than if such prefer-

ences were absent. If the assignment with or without preferences is made with intent to hinder, delay and defraud creditors, it may be set aside by a creditor who is in a position to file his bill for that purpose, and he may thereby obtain a preference upon the assets which were attempted to be assigned by an assignment without preferences, in precisely the same manner as he could in the case of an assignment with preferences which had been made to hinder, delay and defraud the creditors of the assignors.

Therefore, the question presented by this appeal is whether a creditor can ever, under any circumstances, receive with safety payment of his debt through the instrumentality of an assignment.

It may be urged that this is not the question involved, but that it states much too broadly the situation as developed by the pleadings before the court. In considering the question which is presented by the pleadings, it is necessary to bear in mind the results which must necessarily follow from the rule sought to be sustained by the appellant. If this rule is to obtain, then no creditor can ever, when he receives the payment of his debt through the instrumentality of an assignment of his debtor's property, be sure that he may not be called upon to refund the money because of fraud in the making of the assignment. This statement is true, because if an action may be brought after a creditor has been paid his debt through the instrumentality of an assignment by any judgment creditor to set aside the assignment and recover back the money paid under it to the creditor, and devote it to his own use, then, under the statute of limitations applicable to these causes of action, the creditor receiving the money is never safe because the other creditor has a right to bring his action at any time within six years after the discovery of the fraud; and if he discovers the fraud twenty years after the payment has been made, we can see no reason, if this rule is to prevail, why the creditor cannot be made to disgorge the money for

the benefit of this creditor who has accidentally acquired knowledge that twenty years before there was fraud in the assignment under which the creditor had been paid, and that, too, long after the debt due to the creditor who is thus pursued has been outlawed, and he has lost all remedies of every kind and nature against his debtor.

It is not necessary to discuss the proposition that the assignee is protected in making these payments, and that he cannot be called upon to account for them, nor to refund the money which he has paid out in pursuance of the directions contained in the fraudulent assignment. That proposition is not challenged by the learned counsel for the appellants, but, it is claimed, that although the act of the assignee is valid in paying the money, and although he cannot be called to account, yet the act of the *bona fide* creditor in receiving it is unlawful. It seems to us that if the assignee has a right to pay, there can be no question but that the *bona fide* creditor has a right to receive, and that the act of the assignee in paying cannot be held legal and valid, and the act of the creditor in receiving payment be challenged.

We can safely rest the decision of this question upon this point alone, because we know of no principle under which the title to property can be attached where the act of the person in transferring the property was legal and valid. The right to property has been set aside where the act of the transfer of the property has been invalid and done with a fraudulent intent, and where the transferee was aware of that fraudulent intent, or where he had not parted with any value upon the receipt of the property. But where the act of the transferor cannot be attacked, and has in no manner defrauded or injured the person complaining of such act, and where the property is received by the transferee in good faith and for a valid consideration, it is difficult to see upon what principle the title to this property can be attached by anybody.

The decision in the leading case upon the point that an assignee cannot be rendered responsible for the proceeds of. the assigned property which has been distributed to *bona fide* creditors under the assignment clearly shows that the above statement is entirely correct.

It is said in Ames *v.* Blunt (5 Paige, 13), that the liability of the assignee for the proceeds of the assigned property which has been distributed to the *bona fide* creditors under the assignment, must depend upon the question whether the legal or equitable rights of the plaintiffs have been impaired or affected by such distribution ; in other words, whether they have in fact been defrauded thereby. The principle, then, upon which the decision of the court in Wakeman *v.* Grover, and of the vice chancellor in the present case, is sustainable, is that the proceeds of the assigned property had been distributed according to the directions of the assignors in payment of *bona fide* creditors to whom such proceeds might have been lawfully distributed by the assignors themselves at any time before the plaintiffs had obtained any legal or equitable lien thereon, and that, therefore, the complainants had not been defrauded or injured by such distribution.

This case was better approved in the case of Miller *v.* Earle (24 N. Y. 110).

Now if the assignee, by his distribution of the assigned property according to the directions of the assignors in payment of *bona fide* creditors, did not defraud or injure the complaining creditors, then in what possible way has the creditor, sharing in the distribution, defrauded or injured the complaining creditors by receipt of the payment of his debts ?

Although this point has not been presented by the argument of counsel for the respondents, yet we think that we should rest the decision upon it and that we should not consider the various other points which have been raised by the respondents, seeking for other and different reasons to sustain the claim made by the demurrer.

It might be shown, we think, very conclusively, that for other reasons none of those points have been well taken. But we do not consider it advisable to enter upon this discussion, as it might draw attention away from the single proposition which it seems to us must control the disposition of this appeal.

The judgment appealed from must be affirmed, with costs

DANIELS and BRADY, J.J., concur.