HENRY M. PEYSER and Others, Appellants, v. SARAH L. MYERS and Others, Respondents, Impleaded, etc., with WILLIAM M. HALSTEAD and Others.

*Compound interest — when it cannot be recovered after being paid — when it can — assignment set aside as void.*

In a judgment-creditor's action, brought to set aside a general assignment made by a firm, it appeared that an account stood upon the firm books showing a credit to one Myers, who was preferred under the terms of the assignment, in which account interest had been added at the rate of twelve per cent per annum from January 1, 1870, to June 1, 1877; that about the month of June, 1877, Myers drew out of such account the principal and interest, $183,699.70, to which, according to the books, he had become entitled, and shortly thereafter he returned to the firm $179,000.

It further appeared from the firm books that some $140,000 was due to Myers in January, 1874, and that from that date to the time of the failure of the firm in July, 1884, there was over $130,000 allowed as interest on this account, which was some $48,000 in excess of what the simple interest for that period would have been. No agreement was proved to pay or allow to Myers compound interest.

*Held*, that the interest drawn out by Myers, in 1877, could not be recovered by the plaintiffs, as by the statute the right of the borrowers, as well as of the plaintiffs claiming under them, to recover the usurious excess of interest, was limited to an action to be brought within one year after the payment thereof.

That, as to the excess of interest credited to Myers in the second account above-mentioned, and claimed by him to be due at the time of the failure, inasmuch as the assignment was adjudged to have been made with the intent to hinder, delay and defraud creditors, the payment thereof by the assignee to him, under the preference contained in the assignment, was invalid, and that the plaintiffs were entitled to have this excess of interest applied in satisfaction of their demands.

APPEAL by the plaintiffs from so much of a judgment rendered at a Special Term held in the county of New York, and entered in the office of the clerk thereof on the 12th day of December, 1889, as directed that the complaint be dismissed upon the merits as to the defendants, Sarah L. Myers, John K. Myers and Matthew R. Myers, and that the defendants Myers, as executors, etc., recover from the plaintiffs their costs of this action.

*John J. Adams* and *Charles E. Hughes*, for the appellants.

*William Pierrepont Williams*, for the respondents.

DANIELS, J.:

The plaintiffs are judgment-creditors of the firm of Halsted, Haines & Co. They recovered their judgments in the latter part of the year 1884 and the early part of 1885. And upon these judgments executions were issued against the property of the judgment-debtors and returned unsatisfied. On the 12th of July, 1884, the judgment-debtors made a general assignment to Lewis May of all their joint and individual property for the benefit of their creditors. This assignment contained a preference in favor of the executors of John K. Myers for the sum of $102,872. The assignment also contained other preferences amounting to about the sum of $400,000. After the assignment was made and accepted by the assignee, and on the 9th of September, 1884, he delivered to Frederick A.

Ward, who was the attorney for the preferred creditors, a check for the amount of their preferences. The payment of this check was restrained by an injunction at the suit of other judgment-creditors, but it was paid on the 16th of October, 1884, and the attorney transferred to the executors and executrix of the estate of John K. Myers the amount received by him on account of and to satisfy this preference. And it was the object of the action to set aside the assignment and this payment, and require the executors and executrix to account for so much of this money as should be necessary to pay the judgments set forth in the complaint in this action.

The testator became a partner in a preceding firm engaged in the same business and under the same name as early as January 1, 1860, and he invested as capital in the firm the sum of $62,318.73. This was increased by interest and profits to the sum of $131,828.85 by the 1st of December, 1872, and the evidence tended to show that on that day the testator withdrew from the firm. The evidence as to this fact was not very decisive. But it did appear that after the 1st of January, 1873, his account on the books of the firm was headed, instead of a stock account, a private account. And a notice was published in the New York Times, over the name of the firm, stating that Myers had withdrawn from it. A new firm was organized in January, 1873, and the bookkeeper of that firm testified that Myers was not one of its members. His evidence was by no means decisive, but it tended to establish that to be the fact. And a similiar statement was made by the plaintiffs' witness Davidson from the examination which he made of the books, but it was not confidently adhered to in the future course of his evidence. The witness William A. Haines stated that he was very confident that Myers retired from the firm within three years after he himself entered it, and he became a member of the firm in 1870. And the witness William M. Halsted added, in the course of his evidence, that he thought Mr. Myers retired from the firm in December, 1872. These witnesses were unable to state the making of any agreement by which Myers ceased to be a member of the firm. But from the manner in which the books were kept and the statements were made by them, there was sufficient to sustain the conclusion reached by the

judge presiding at the trial that Myers did cease to be a member of the firm from the last of December, 1872.

Interest was stated to appear from the books to have been added to his account at the rate of twelve per cent from the 1st of January, 1870, to the 1st of June, 1877; and, so far as this exceeded the sum of five per cent, it is claimed in behalf of the plaintiffs that it should be accounted for and applied to the payment of the plaintiffs' judgments. But it appeared from the evidence that the testator, in the early part of the summer of 1877, became apprehensive that the reservation of this additional interest might imperil his right to the moneys standing to his credit on the books of the firm; and during the months of May, June and July, 1877, he, with the assent of Mr. Halsted, who seems to have been more especially the managing partner of the firm, drew out of it the principal and interest, to which, according to the books, he had become entitled, receiving in this manner the aggregate sum of $183,699.70, and during the same months he returned to the firm the sum of $179,000. The object, which seems to have induced these collections and the return of the money, was to put it out of the power of the firm to question its liability because of the reservation of this usurious interest; and the adjustment of the amount in this manner not only prevented the firm itself, but the plaintiffs, insisting upon the right to the collection of this usurious reservation of interest.

The result would have been the same if this change in the accounts had not taken place, for, by the statute, the right of the borrowers, as well as of the plaintiffs claiming under them, to recover the usurious excess of interest, was limited to an action to be brought within one year after the payment of the usurious interest. (2 R. S. [6th ed.], 1165, § 3; *Palen* v. *Johnson*, 50 N. Y., 49.) But when the debtors made the assignment, even if the preference contained in it, in favor of the executors and executrix of the testator, included the balance which, in part, had arisen out of the allowance of this interest, that would not entitle the plaintiffs to recover it, for such an assignment has been held to preclude the assignee, as well as the other creditors, from questioning the legality of the preference. (*Murray* v. *Judson*, 5 Seld., 73.) As to this usurious interest it was properly held, therefore, that the plaintiffs were not in a condition to maintain their action.

It further appeared from the books of the business that $141,893.31 was due to the testator on the last of January, 1874; and from that date to the failure in July, 1884, there was $130,157.74 allowed as interest on his account; and that the simple interest for that period was the sum of $57.095.70, leaving a residue consisting of credits for compound interest amounting to the sum of $48,574.99, and the interest had been compounded annually, or semi-annually, as it appeared by the books. The testator died in September, 1877, and this firm is shown to have been insolvent from the first of January of that year. But no agreement has been proved at any time to pay or allow to himself or his representatives this compound interest. And without proof of an agreement, sustained by a legal consideration, the allowance of such interest was unauthorized. This was considered in *Young* v. *Hill* (67 N. Y., 162), where the court determined " that an agreement to pay interest upon interest must, in order to its validity, be made after the interest which is to bear interest has become due; and, second, that it must be supported by sufficient consideration. A mere voluntary promise, without a consideration, is a *nudum pactum* and cannot be enforced." (Id., 167, 168.) As the proof appeared in the case, therefore, so much as was paid by the assignee to the personal representatives of this partner for compound interest was unlawful. Neither an agreement for its allowance was proved to have been at any time entered into, nor was any consideration shown to support such an agreement if it had been made. And the consequence was, that so much money as was paid by the assignee under the assignment to the executors and executrix of this estate, as included this compound interest, was substantially a gift to them, which, as the trustee of an insolvent estate, he had no right or authority to donate, and they were equally without the right to receive it. And in *Bates* v. *McConnell* (31 Fed. Rep., 588) it was held that a judgment-creditor was authorized to follow such a disposition of the insolvent estate and have it applied to the payment of his judgment. And this principle has the sanction of *Penn Bank* v. *Furness* (114 U. S., 376). There a retiring partner had drawn out a part of the capital of the firm, receiving an agreement from the other members that they would pay its debts. The firm was at the time insolvent. And it was held, under these facts, that the retiring partner should restore

the capital received by him "so far as may be necessary to pay the debts of the concern existing at the time, and this, too, whether there was any fraud designed in the transaction or not." (Id., 380.) And this principle has not been in any manner questioned or impugned by what was decided in *First National Bank, etc.*, v. *Central National Bank* (53 Hun, 575); for there the payment was not only made in good faith, but the creditor receiving it had become entitled to it through the preference of an existing indebtedness. contained in the assignment; while in this case the executors and executrix receiving the money had no title whatever to it, and no right to withhold it from the other creditors of this firm.

By the assignment all the property of this firm, or nearly all of it, was devoted to the payment of the preferences contained in it. And the other preferred creditors received their money at or about the time when the payment of this preference was made to the representatives of this estate. And diverting so much of it as was used to satisfy the creditors for compound interest was no more than a gift of that sum of money. And as this assignment has been adjudged, and was conceded at the trial to have been made with the intent to hinder, delay and defraud creditors, the plaintiffs were entitled to succeed and to be secured the appropriation of this money for the satisfaction of their demands. The law does not permit insolvent debtors, or an assignee representing them, voluntarily to donate any part of his estate to another. But such donation or gift will be held to be void when the estate is insufficient to pay the demands existing against it, as this estate was and had been for a period of upwards of six years. (*Dunlap* v. *Hawkins*, 59 N. Y., 342; *Cole* v. *Tyler*, 65 id., 73; *Carr* v. *Breese*, 81 id., 584, 589.)

The payment of these moneys to the representatives of this estate, and their right to detain it from the other creditors, is not sustained by the fact that a judgment was recovered in their behalf against the assignors in August, 1884. A suit was brought to recover such a judgment, and the judgment was obtained afterwards by default for want of an answer. The other preferred creditors also obtained similar judgments upon their demands. And there is reason to believe that the actions were commenced and prosecuted at the suggestion of one at least of the judgment-debtors. They were all brought by the same attorney; and, so far as this particular judg-

ment included the amount of this compound interest, it stood on no more than a fictitious demand. It had no foundation either in law or in fact, and was on that account a collusive or fraudulent judgment. It is, of course, true, as the law was conceded to be in *Candee* v. *Lord* (2 Comst., 269), that a judgment recovered in good faith by a creditor against his debtor will be held to be conclusive in a controversy of this description. But to allow that effect to be attributed to it, it is essential that it must be recovered without fraud or collusion. If it has been recovered in bad faith, it is then entitled to no effect whatever. (*Acker* v. *Leland*, 109 N. Y., 5, 16.)

And a judgment recovered upon an alleged indebtedness, having no foundation in fact, may reasonably be held to be a fraudulent or collusive judgment. And where the object of its recovery is to transfer the insolvent debtor's property to parties not entitled to receive it, there its recovery is to be inferred to have been intended to defraud the creditors of the insolvent debtor. And where that is the case it has been declared to be void by the statute, providing that every conveyance, etc., and every charge upon lands, goods or things in action, and every bond or other evidence of debt given, suit commenced, or judgment suffered, with the intent to hinder, delay or defraud creditors, shall be void. (3 R. S. [6th ed.], 145, § 1) And this judgment, to the extent already considered, is within the condemnation of this section of the statute.

But if it were not, as the money in dispute was not collected by the execution issued upon the judgment and levied on the assigned property, the judgment interposes no obstacle whatever in the way of the success of the plaintiffs' action. For the fact was proved in the case, and found by the court, that the amount received by the representatives of this estate was paid by the assignee. And his authority for making that payment was not the judgment or execution, but the preference contained in the assignment. The money was not collected under the execution, but it was voluntarily paid over under the authority of the assignment itself. And as the representatives of this estate had no title to it and no authority to receive it, the plaintiffs were entitled, as judgment-creditors, to maintain this action for the appropriation of this money to the payment of their judgments. When their action was commenced the assignment had been declared void at the suit of other creditors, and it was not inter-

posed as a valid instrument in the way of this action. But whether it could be or not, the payment of this compound interest to the representatives of this estate was a fraud upon the unpreferred creditors of the insolvent debtors. And as neither the assignment nor the judgment stand in their way, they should be permitted to recover these moneys certainly since July, 1877, when the $179,000 was returned, so far as they will be sufficient to pay the judgments in dispute, if the amount shall exceed the aggregate sum which may be recovered upon them.

The judgment should be reversed and a new trial ordered, with costs to the plaintiffs to abide the event.

Van Brunt, P. J., and Brady, J., concurred.

Judgment reversed and new trial ordered, with costs to the plaintiffs to abide event.