Massachusetts, etc., Ins. Co. *v.* State, ex rel.—82 Ind. App. 377.

MASSACHUSETTS BONDING AND INSURANCE COMPANY
*v.* STATE, EX REL. SUMMERS.

[No. 11,677.   Filed Januuary 15, 1925.]

1. HIGHWAYS.—*Complaint on highway contractor's bond held sufficient.*—A complaint on a bond given by a contractor for the construction of a certain highway, after the awarding of the contract, in lieu of a bond filed with his bid, alleging that it was approved and accepted by the board of commissioners and that relator furnished the contractor labor and materials for the construction of the highway, and a failure to pay therefor, is sufficient on demurrer.   p. 381.

2. HIGHWAYS.—*Highway contractor's bond including more than statutory obligations not invalid.*—The fact that the scope of a highway contractor's bond was beyond the provisions of §7723 Burns 1914 would not invalidate it, the taking of such bond with the additional obligations being within the incidental. powers of the board of commissioners.   p. 381.

3. BONDS.—*Joint.action on several bonds by same principal authorized by statute.*—Under §254 Burns 1914, a joint action may be maintained on two or more bonds given by a public officer or other person, and the court or jury trying the same is authorized to determine the rights of the respective sureties.   p. 381.

4. ACTIONS.—*Granting of separate trials to several defendants discretionary with court.*—Generally speaking, it is discretionary with the trial court whether separate trials shall be granted to several defendants.   p. 381.

5. ACTIONS.—*Refusal of court to require plaintiff to elect between causes of action on several bonds given by public contractor not error.*—In view of §254 Burns 1914, authorizing a joint action on different bonds of a public officer or other person, the refusal of the court, in an action on several bonds given by a highway contractor, to require the plaintiff to elect as to which cause of action he would try first was not error.   p. 381.

6. APPEAL.—*Want of bill of exceptions not ground for dismissing appeal where questions not involving bill are presented.*—That bill of exceptions is not in the record is not ground for dismissing an appeal where questions not involving bill of exceptions are presented.   p. 382.

7. APPEAL.—*Record entry held to show bill of exceptions properly in record.*—A record entry reciting the tendering of a bill of exceptions to the judge for approval, his signing thereof, and an order that it be filed and made a part of the record, and that said bill "heretofore signed and approved by the court

378    APPELLATE COURT OF INDIANA,

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—82 Ind. App. 377.

is now filed," sufficiently shows that the bill was filed after it was signed.    p. 383.

8.   HIGHWAYS.—*Surety on partners' bond as road contractors not liable to one advancing funds on credit of one partner after he knew other partner had withdrawn.*—A surety on the bond of two road contractors conditioned that they would pay all debts "incurred by them" in the construction of the road is not liable to a person that advanced money to one of the contractors on the latter's individual credit after he knew that the other had withdrawn and was no longer connected with the road construction.    p. 384.

9.   HIGHWAYS.—*County commissioners cannot release surety on road contractor's bond on giving of new bond.*—In the absence of statutory authority, a board of county commissioners is without authority to release a surety on a road contractor's bond, from which it follows that although a new bond with a different surety is executed in lieu of the original bond, the board cannot release the surety thereon.    p. 393.

10.   HIGHWAYS.—*In an action on contractor's bond, checks and other proofs of payments to contractor inadmissible in absence of showing of use thereof in road construction.*—In an action on a road contractor's bond by one claiming to have furnished money to the contractor to be used in providing material and labor for the construction of the road, checks and other evidences of the payment of money to said contractor were inadmissible where there was no evidence that they were issued for some debt incurred in the construction of the road.    p. 395.

11.   EVIDENCE.—*Carbon copies are duplicate originals, and admissible in evidence without accounting for other impression.*—Carbon copies of a written instrument are regarded as duplicate originals, and may be introduced in evidence without accounting for any other impression of the writing.    p. 395.

From Orange Circuit Court; *James L. Tucker,* Judge.

Action by the State of Indiana on the relation of Charles D. Summers against the Massachusetts Bonding and Insurance Company and others.    From a judgment for the relator, the defendant appeals.    *Reversed.*

*George Young, Bomar Traylor, Arthur McCart* and *Richard L. Ewbank,* for appellants.

*A. L. Gray, Samuel A. Lambdin, John E. McFall, W. E. Cox* and *Horace M. Kean,* for appellee.

PER CURIAM.—Action by appellee State of Indiana on the relation of Charles D. Summers against appellant

NOVEMBER TERM, 1924.            379

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—82 Ind. App. 377.

and other appellees, for the purpose of recovering certain moneys advanced by relator for the construction of a public gravel road, which road was contracted by appellees Weathers and Case with the board of commissioners of Dubois county.

The complaint was in four paragraphs. A demurrer was sustained to the second paragraph and we give it no further consideration.

It is averred in the first paragraph that on November 6, 1911, appellees Weathers and Case entered into a contract with the board of commissioners of Dubois county, Indiana, by which said appellees agreed to construct a certain gravel road in said county, agreeing by such contract to do the work and furnish the material according to the plans and specifications, for which they were to receive $19,249. Said appellees filed with their bid their bond in the sum of $38,498, with appellee Bankers Surety Company of Cleveland, Ohio, as surety thereon, which bond was accepted and approved by the board and was conditioned that Weathers and Case should duly construct the road and should promptly pay all debts incurred by them in the prosecution of such work, including labor, materials furnished and for boarding laborers thereon. On December 21, 1924, appellee Maryland Casualty Company entered into a reinsurance agreement with appellee Bankers Surety Company by which the surety company was merged into the casualty company so that the casualty company became the owner of the assets of the surety company and assumed its liabilities. Weathers and Case constructed the gravel road, but it is averred that the relator furnished them labor and material in the sum of $8,532.40, upon which a credit of $4,480 was given for payments, leaving a balance due the relator of $4,152.40, upon which balance, the relator was entitled to six per cent. interest from December 1, 1917, for which, be-

380    APPELLATE COURT OF INDIANA,

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—82 Ind. App. 377.

cause of failure to pay, there was a demand for judgment.

The third paragraph of complaint is against the same defendants and is substantially the same as the first but more specific as to the manner and method of furnishing funds by relator to said Weathers and Case.

The fourth paragraph of complaint contains the same averments as to appellees Weathers and Case entering into a contract with the board of commissioners and the filing their bond with the Bankers Surety Company as surety thereon, and then avers that on the —— day of ————, 1911, said surety company notified the board of commissioners that their attorney in fact who signed the bond did so without authority, and had gone beyond his written power of attorney, and such surety company denied all liability on the bond. Thereupon, to secure the performance of the contract and to protect the materialmen and laborers and other creditors of the contractors, the board of commissioners required the contractors to file an additional bond. January 2, 1912, which was after the awarding of the contract, said contractors filed an additional bond in the sum of $38,498, with appellant as surety thereon, which bond was approved and accepted by the board and was conditioned that the contractors should construct the road according to the plans and specifications, and should pay all debts incurred in the prosecution of the work, including labor and materials furnished and for boarding laborers thereon. After constructing a portion of the road, the contractors abandoned the same and it was completed by the board of commissioners. It then averred substantially the same facts as to furnishing the funds by the relator for the construction of the road and the failure to pay as are found in the first and third paragraphs.

There was a demand for judgment in this paragraph

against all of the defendants therein being appellees Weathers and Case, the Bankers Surety Company, Maryland Casualty Company, and appellant.

In presenting error of the court in overruling its demurrer to the fourth paragraph of the complaint, appellant presents substantially the same questions 1, 2. as were presented in *Massachusetts, etc., Ins. Co.* v. *State, ex rel.* (1920), 76 Ind. App. 16, 127 N. E. 223. There was an application to transfer to the Supreme Court, in that case, which was denied. On its authority, we hold that the paragraph in question states a cause of action, and the demurrer thereto was properly overruled. See, also, *Robling* v. *Board, etc.* (1895), 141 Ind. 522, 525. The fact that the scope of the bond was beyond the provisions of §7723 Burns 1914, Acts 1905 p. 521, does not invalidate it. The taking of such bond is within the incidental powers of the board. *Title Guaranty, etc., Co.* v. *State, ex rel.* (1915), 61 Ind. App. 268, 109 N. E. 237.

Appellant presents error of the court in overruling its motion to separate the cause of action under the first and third paragraphs of the complaint from 3-5. the cause of action under the fourth paragraph of complaint, and as to whether the court erred in overruling its motion to require the relator to elect which he would try first, the action as stated in the fourth paragraph of complaint or the action as stated in the first and third paragraphs of complaint. That such practice of requiring an election is recognized by our courts. See *Boonville Nat. Bank* v. *Blakey* (1906), 166 Ind. 427, 448. Section 254 Burns 1914, Acts 1889 p. 264, provides that "whenever any public officer or other person is required by the law of this state to give bond for the performance of his duties, and more than one bond is given by the same officer or person for the performance of such duties, either during the same pe-

382    APPELLATE COURT OF INDIANA,

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—82 Ind. App. 377.

riod of time or for successive periods of time, any person entitled to sue upon either of said bonds may bring a suit upon all or any number of said bonds, and in such action the liability of all the respective sureties thereon shall be determined by the court or jury." That the first bond or the one given by the Bankers Surety Company was a bond required by the laws of this State is unquestioned. More than one bond was given by appellees Case and Weathers, and, under such circumstances, by the foregoing section of the statute, even though one of the bonds is a guaranty bond and the other a surety, a joint action upon both of said bonds was authorized, and it was for the jury to determine the respective rights of the sureties. *State, ex rel.,* v. *Parsons* (1897), 147 Ind. 579, 47 N. E. 17, 62 Am. St. 430. Generally speaking, it is within the discretion of the trial court whether upon proper motion made a separate trial will be granted to the respective defendants. Under the circumstances of this case, and in view of the statute quoted above, there was certainly no error in overruling appellant's motion to require the relator to elect as to which cause of action he would try first.

Appellee's motion to dismiss the appeal heretofore filed is overruled. We hold that the transcript shows a good faith effort to place proper marginal notes upon the record. Another question presented therein is that the bill of exceptions is not in the record. As appears above, other questions not involving the bill of exceptions are presented by this appeal, and under such state of the record, the fact, if such it were, that the bill of exceptions is not in the record would not be a sufficient ground for dismissing the appeal.

We have next to consider, under the error assigned by appellant that the verdict of the jury is not sus-

tained by sufficient evidence and that it is contrary to law, the question as to whether the bill of exceptions is in the record.   It appears by the record that on February 13, 1923, being in term, the following entry was made of record, to wit:   "Comes now, the defendant Massachusetts Bonding and Insurance Company, by its attorneys and tenders herein its bill of exceptions which said bill of exceptions are in · the following words and figures; to wit:   (Here insert.)   And the court examines and signs said bill of exceptions and orders the same filed herein and made a part of the record, which said bill of exceptions heretofore signed and approved by the court is now filed, and is in the following words and figures; to wit": Then follows an index containing seven pages of what purports to be the bill of exceptions, upon the first page of which index there is a filing mark of the court dated· February 13, 1923.   Following this index, appears the number of the action of the trial court with the caption of the cause followed by:

"General Bill of Exceptions.

"BE IT REMEMBERED.   That at the September term, 1922, of the Orange Circuit Court, to wit: on the 22nd day of September, 1922, Honorable James L. Tucker, Judge, presiding, the following proceedings were had in this case:   The cause being at issue and the jury impanneled and sworn, the parties introduce the following evidence":   After what purports to be the evidence adduced the judges' certificate reads as follows:   "AND BE IT FURTHER REMEMBERED that the above and foregoing transcript of the evidence so taken, reported and filed as aforesaid, contains all the evidence given in said cause, with the objections thereto, the rulings of the court on such objections, and exceptions to such rulings, and that the same is ordered to be certified without copying as a part of the records

384    APPELLATE COURT OF INDIANA,

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—82 Ind. App. 377.

of this case.   And on the 13th day of February, 1923, the defendant tendered his bill of exceptions, and prayed that the same might be signed, sealed and made a part of the record in this case, which is accordingly so done, this 13 day of February, 1923.

"James L. Tucker, Judge, Orange Circuit Court."

Then follows the certificate of the clerk of the Orange Circuit Court which, so far as here involved, recites as follows:   "And I further certify that the bill of exceptions containing the evidence hereinabove inserted is the same identical and original bill of exceptions duly signed by the said defendant Massachusetts Bonding and Insurance Company, by its attorneys in my office as such clerk on the 13th day of February, 1923."   We hold that the bill of exceptions by these entries is properly in the record.   *Talge Mahogany Co.* v. *Burrows* (1921), 191 Ind. 167, 130 N. E. 865.

In presenting error of the court in refusing to give its tendered peremptory instruction to find for the defendant, appellant makes the point that even if its bond were otherwise valid, and we hold that it is, it will be construed only to cover the liabilities contemplated by the parties and not to include the relator's alleged rights as shown by the evidence, and that the courts have no power in any way to extend such liabilities.   There is certainly merit in this contention.

If it appears by the uncontradicted evidence in this case that appellee had no right of recovery under the law, the peremptory instruction tendered by appellant should have been given.   It will be observed that appellant's bond involved in this action was conditioned, *inter alia,* that appellees Weathers and Case, contractors, should pay *all debts incurred by them.*   Appellee Summers was a witness in his own behalf.   He testified that Harry Case was foreman for his brother, appellee Case, at the quarry from which

the stone for the construction of the road was taken and that he, Summers, placed his checks to Case's credit. That this quarry was leased to Case and he had exclusive control over it; that appellee Case did the actual business and that all of Summers' dealings were with appellee Case; that he did not know that anyone else was interested in the road except himself and appellee Case. That his payments were made to the account of appellee Case; that John Enlow and appellee Case had the right to check on that account, and that Weathers had no such right that he knew of,—he supposed that he had not; that he knew that Weathers was out of the deal, and was not in it in anything that he, Summers, had to do with it; that the credit that he extended was to appellee Case, with whom alone his dealings were, and that whatever contract he, Summers, had, he was holding appellee Case for it. He testified that he only knew that the original contract was let to appellees Case and Weathers through the papers, if he knew it at all, and that he could not say that he knew it. It clearly appears from this uncontradicted evidence, given by the relator himself, that appellee Weathers was out of the deal, that the relator extended credit to appellee Case only, as an individual, and that he extended no credit whatever to appellees Case and Weathers, as partners or as members of a common enterprise. Case incurred no debt for himself and Weathers, and appellee Summers did not hold Case and Weathers for the money which he had furnished Case under the contract. Weathers had incurred no debt nor had the firm of Case and Weathers incurred the debt. The bond, however, was conditioned only for the payment of all debts *incurred by them,* Case and Weathers, and was not conditioned for the payment of any debts for which Case was himself individually liable.

That appellant would have been liable for any default upon the part of Weathers and Case in the construction of the highway according to the plans and specifications cannot be questioned, and this would be true whether such failure was the result of their own default or that of some other person or firm to whom they might have assigned their contract. That appellant would have been liable for any default of Weathers and Case in the payment for material and labor is equally well settled. But when the relator, knowing that Weathers was out of the deal, furnished money to Case, to whom alone he looked for reimbursement, even though Case used the money for constructing the highway and paying for material and labor, he could not recover therefor against appellant as surety or as guarantor on the bond of the firm of Weathers and Case. The principle is illustrated in those cases involving the retirement of a member of a partnership and the liability of such retiring partner thereafter.

In *Askew* v. *Silman* (1894), 95 Ga. 678, 22 S. E. 573, Mrs. Silman sued Askew and others alleged to be members of a firm of Austin and Company upon a promissory note signed in the firm name, and dated June 17, 1890. Askew pleaded "not indebted"; also that he had not signed the note nor authorized anyone to sign it for him, and had never ratified the signing, further, that he was not a member of the firm when the note was signed, and that he was not bound by the contract. It was held that if the money for which the note was given was borrowed and the note given without Askew's knowledge and consent and without subsequent ratification on his part, and if he was not liable on other grounds, the fact that the money was used for paying debts contracted by the firm prior to his withdrawal therefrom would not render him liable.

In *Penn Bank* v. *Furness* (1885), 114 U. S. 376, 5

Sup. Ct. 900, 29 L. Ed. 168, one of the partners withdrew from the partnership, the members all believing at the time that the firm was solvent. The partners remaining paid to the retiring partner a certain sum for his capital. They borrowed money on the responsibility of the new firm with which to pay the retiring partner. It developed that the firm was insolvent at the time of dissolution, and in a suit in equity by the bank to charge the old firm with the money loaned to the new firm, it was held that it could not be done as the transaction was entirely between the bank and the new firm.

In *Goodspeed* v. *South Bend Plow Company* (1881), 45 Mich. 237, 7 N. W. 810, it was held that a partnership, including a retiring partner, was liable upon an account for goods sold before the partnership dissolution, but that it was not liable upon a note executed by the new firm for such goods. Other authorities are *Dixie Cotton Oil Co.* v. *Morris* (1906), 79 Ark. 113, 94 S. W. 933; *Commercial Bank* v. *Miller* (1898), 96 Va. 357, 31 S. E. 812; *Mathews* v. *Colburn* (1846), 1 Strob. (S. C.) 258.

In each of the cases cited, the credit was not extended to the old partnership, but to those remaining after the dissolution. So, in this case, no credit was extended to Weathers and Case by the relator, and the relator looked only to Case for payment. Under such circumstances, we do not see how appellant can be bound for the debts so incurred by Case on his own individual credit.

Appellant has by divers proper assignments of error presented the question of the legal effect, if any, of the action of said board of commissioners in making and entering the order purporting to release the bond given by Bankers Surety Company. As shown by the record, on November 6, 1911, the board of commissioners

388    APPELLATE COURT OF INDIANA,

Massachusetts, etc., Ins. Co. v. State, ex rel.—82 Ind. App. 377.

entered into the contract with Weathers and Case for the construction of the road in question, and, at the same time, approved a construction bond, tendered by said Weathers and Case, in which they were the principals and the Bankers Surety Company was surety thereon. Thereafter, on January 2, 1912, the said Weathers and Case tendered to said board of commissioners another bond, covering the construction of said road, in which they were named as principals, and the appellant herein the surety thereon, which bond the board then and there approved, and also caused to be entered in their record of proceedings the following: "And the board being duly advised in the premises approves said bond, and the bond heretofore executed by the Bankers Surety Company is now cancelled and surrendered."

In 7 R. C. L. 936, it is said: "Counties being created for purposes of government, and authorized to exercise to a limited extent a portion of the power of the state government, have always been held to act strictly within the powers granted by the legislative act establishing them. Accordingly, the statute is to them their fundamental law, and their power is only coextensive with the power thereby expressly granted, or necessarily or reasonably implied from its granted powers."

In *Board, etc.*, v. *Bradford* (1880), 72 Ind. 455, 37 Am. Rep. 174, it was said: "The board of commissioners of a county is a creature of the statute, and is vested with and possessed of just such powers, rights, privileges and franchises, corporate, judicial, legislative and ministerial, as the statute has conferred upon it, and such as are clearly and necessarily implied, to enable it to carry out and accomplish the objects and purposes of its creation."

In *State, ex rel.*, v. *Hart* (1896), 144 Ind. 107, 33 L. R. A. 118, the commissioners of LaPorte county had

NOVEMBER TERM, 1924.            389

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—82 Ind. App. 377.

leased certain rooms in the court house to be used for
private business. Suit was brought calling in question
the power of the commissioners to make such contract,
and, in passing upon the matter, the court said: "Con-
sidered with respect to their corporate powers, counties
rank low down in the scale of corporate existence, and
are frequently termed *quasi* corporations," citing au-
thorities. The court also quoted from §5745 R. S. 1881,
§7830 Burns 1894, (§5985 Burns 1914) which provides
that the board: "shall have power, at their meetings,
to make orders respecting the property of the county
according to law; to sell the public grounds of the
county upon which the public buildings are situate and
to purchase in lieu thereof, in the name of the county,
other grounds in the county seat on which such build-
ings shall be erected; to purchase other lands for the
enlargement of the public square; and take care of and
preserve such property" and, in conclusion said: "We
think it clear, both upon principle and authority, that
the boards of commissioners in this State have no power
to rent the court house, or any part of it, for private
use, * * *." The decision was based upon the fact
that there was no statute which authorized such action
by such board.

In the case of *Millikan* v. *Edgar County* (1892), 142
Ill. 528, 32 N. E. 493, 18 L. R. A. 447, the board of
commissioners had made a contract with a named per-
son to keep and care for the poorhouse and inmates for
a period of three years. In passing upon the validity
of the contract, the court said: "Counties are political
divisions of the State, created for governmental pur-
poses. They possess such powers as have been con-
ferred by the constitution and legislative department of
the State. These powers are of a public nature, con-
ferred merely for public purposes, and they should be
exercised in such a manner as will best promote the

interests and advance the welfare of the people." Said contract was held void for want of authority in the board to make the same.

In the case of *Hight* v. *Board, etc.* (1879), 68 Ind. 575, the board of commissioners of Lawrence county had made a contract with Hight under which he was to assist the officers of said county in getting evidence, etc., and in prosecuting certain persons charged with murder. In holding the contract void, the court said: "It (the board) will be confined in making contracts to the powers expressly granted to it by the act of its creation, and to the implied powers incidental and necessary to the execution of such expressed powers and the performance of the duties enjoined upon it."

In the case of *Hickerson* v. *Price* (1871), (2 Heisk.) 58 Tenn. 623, Price, clerk and master in chancery, went before the chancellor and asked leave to give a new bond. Leave was granted and a new bond filed, approved by the court, and ordered to be spread upon the minutes; this was done, but no order was made concerning the release of the sureties upon the former bond. Later the sureties upon the former bond petitioned the court to be discharged from said bond and for the entry of a formal decree showing their discharge from liability on such bond. The chancellor to whom the petition was presented seems to have been of the opinion that the entry of the approval of the second bond was sufficient, that no formal discharge was necessary, and declined to make any further order. An appeal was taken and, in passing upon the matter, the Supreme Court said: "Proceedings, under our statutes, for the release of sureties upon official bonds, are summary in their character, and are not to be extended by construction, so as to embrace cases not provided for by statute. * * *." The statute of Tennessee provided that a new bond might be required of an officer upon application *of any*

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—82 Ind. App. 377.

*of his sureties,* but in that case the application was not by a *surety* to be relieved, but by the principal, for leave to execute a new bond. As to this phase of the matter, the court said: "The proper construction of this section is, that the application of the sureties is to be made by them to the Court; and this being a summary proceeding, every fact necessary, under the statutes, to confer jurisdiction upon the Court, should be recited in the decree or judgment accepting the new and exonerating the original sureties." In speaking of the action of the chancellor in accepting such new bond, the court said: "The statutes nowhere confer authority upon the Chancellor to take new bond and security in such a case."

In the case of *Fidelity, etc., Co.* v. *Fleming* (1903), 132 N. C. 332, 43 S. E. 899, the said company had become surety upon the bond of Fleming as sheriff, and he had agreed to pay it a stipulated annual premium therefor so long as he remained in office "unless said Fleming should notify the company of his desire to cancel the same and have the company legally released from all liability as such surety upon said bond during said term of office." After the above bond was executed and became fully effective, the sheriff went before the board of commissioners of his county and presented a new bond, which was approved by the board, and as to the former bond, an order was entered of record that the surety thereon "be and it is hereby released from any and all liability that may arise or occur after this date." The surety company brought suit to recover an annual premium falling due subsequent to the date of the above order. In passing upon the validity of said order, the court said: "The only question presented for our decision is whether the board of commissioners had the power to release the plaintiff from any and all liability on the bond that might

have arisen after the date of the release. If it had not the power to do so, the plaintiff is entitled to recover the amount of the premium, *  *  *.

"The board of commissioners in the several counties possess only those powers which have been prescribed by statute and those necessarily implied by law, and not others. *  *  * We know of no provision by statute for the release of sureties on the bonds of public officers. *  *  * The power, therefore, to release does not exist unless it can be implied from those powers which are conferred by law. The commissioners are authorized and required to qualify and induct into office the several officers of the county, and to take and approve their official bonds, which they shall cause to be registered. *  *  * The sole power given by statute is to take and approve official bonds and any renewals thereof, and when this is done the commissioners have fully performed their duty and completely exhausted the power conferred.

"If it be suggested that the power to release should be implied from the power to receive and approve the bond and sue upon it if there should be a default, the sufficient answer is that the bond does not belong to them, nor is it made payable to them, and all that is prescribed for them in connection with it by the statute is merely the duty of protecting the interests of the public for whom the bond is given. They are not even trustees of those for whose benefit the bond is taken, and really have no more interest in it than the judge or clerk of a court who passes and approves a bond taken in an action pending therein. *  *  *".

In the case of *Sullivan* v. *State, ex rel.* (1889), 121 Ind. 342, Sullivan, as county clerk, had given bond with four persons thereon as sureties, which bond had been duly approved. Afterwards, one of the sureties became dissatisfied and Sullivan and the remaining sureties,

NOVEMBER TERM, 1924.          393

Massachusetts, etc., Ins. Co. *v.* State, ex rel.—82 Ind. App. 377.

instead of executing a new bond in the manner authorized by statute, entered into an agreement in writing that the one surety who was dissatisfied should be released, and that they, the other sureties on said bond, should be the only sureties thereon after a certain named day. The surety who desired to be released and Sullivan, the principal, thereupon went before the board of commissioners of Marion county and presented to said board the matter of accepting the new bond, and the board of commissioners of Marion county entered of record an order accepting the bond offered and releasing the one surety from all further liability upon the old bond. Afterwards suit was brought against Sullivan and all of his bondsmen, for loss of funds upon the bond as originally given, and Burton, the surety whom the county board had ordered released, pleaded such release. In passing upon the matter in question, the court said: "The conclusion we reach is, that the board of commissioners are only empowered to accept the original bonds of the officers, and have no authority to accept new bonds whereby sureties on the original bonds are released, and that the proceedings had before the board of commissioners for the release of Burton are without authority and void, and did not release the defendant Burton from liability on the bond."

In this state we find statutory authority for the board of commissioners to "approve" the bond given by a contractor at the time he enters into his contract with the board of commissioners for the doing of the work in question, to be done under the contract so executed; authority to approve what we may call the contractor's "initial" bond, but we find no authority delegated to said board, either directly or by necessary implication, which would authorize such board to release the surety or sureties on such bond after the same had been once approved.

When we examine the question now before us, independent of authority, we should keep in mind the character of the persons for whose protection such bonds are given, and we should also remember that they are not present before the board of commissioners and have no voice in the matter or business to be transacted, even though they are, or may become, the real beneficiaries of the bond so given. The board of commissioners, in the matter of taking and approving of contractor's bonds, is acting to safeguard the interests of others, not before the board, and it seems to us that their rights and powers in these matters should not be extended by less than "necessary implication."

In the case of *American Bonding Co.* v. *Hall* (1914), 57 Ind. App. 523, it was said: "Some of these cases carry the principle further than others, but they are all in accord in holding that a court has no power to release the sureties on a bond except it be done in accordance with the provisions of a statute conferring such power. Unless so released a bond once approved remains operative as a security until its conditions are performed, or its penalty exhausted or until barred by statute of limitations. A court may require additional bonds whenever necessary for the protection of the trust estate, but upon the giving of a new bond the court has no power to release a bond previously given unless the action is taken pursuant to a statute and in conformity to its terms."

We, therefore, hold that the action of the said board of commissioners in attempting to release the said Bankers Surety Company from all further liability, as surety, on the bond in suit, was without authority of law and of no effect. Any action or rulings of the court not in harmony with the foregoing was error.

Over the objection of appellant, the relator was permitted to introduce in evidence a large number of checks

totaling more than $700. It was the claim of the 10. relator that these checks were issued in payment for labor and material used in the construction of the highway that was under contract, but there was nothing on the face of these checks that so indicated nor was there any evidence to that effect—in fact, if we were to draw our conclusion from their face, it would be that they were not issued for the purpose of paying for labor or material used in the road. Even if appellant were otherwise liable for the reimbursement of the relator for the money paid on these checks, it was certainly not liable unless and until it appeared that the checks were issued for some debt incurred in the construction of the road. The checks should have been identified as being in some way connected with the expense of building the road before they were admitted in evidence. What has been said with reference to these checks is equally true with reference to all payments made by relator. Even though appellant was otherwise liable, it should have been shown that such payments were made for the construction of the road involved.

There was no error in admitting in evidence carbon copies of certain letters and other instruments over the objection of appellant, without first building a 11. foundation for such evidence, by accounting for the original or first type. Different numbers or impressions of a writing produced by placing carbon paper between sheets of paper and writing upon the exposed surface are to be regarded as duplicate originals, of which any may be read in evidence without accounting for the others. *Federal Union Surety Co.* v. *Indiana, etc., Mfg. Co.* (1911), 176 Ind. 328, 331, 95 N. E. 1104; *Pittsburgh, etc., R. Co.* v. *Brown* (1912), 178 Ind. 11, 30, 98 N. E. 625.

Numerous other questions are presented in appellant's

one hundred and thirty-four points, including alleged errors as to the court's ruling in giving or refusing to give instructions and as to the admissibility of evidence. We have, however, considered and disposed of only such questions as are likely to arise at another trial of the cause.

The judgment is reversed, with instructions to the court to grant a new trial and for further proceedings in harmony with this opinion.